## BUSHNELL *v.* KENNEDY.

1. It would seem that the restriction in the 11th section of the Judiciary Act, giving original jurisdiction of the Circuit Courts, and which provides that they shall not "have cognizance of any suit to recover the *contents* of any promissory note or other *chose in action*, in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said *contents* if no assignment had been made," applies only to rights of action founded on contracts, which contain within themselves some promise or duty to be performed, and not to mere naked rights of action founded on some wrongful act, or some neglect of duty to which the law attaches damages.

2. However this may be, the restriction of the 11th section not being found in the language of the 12th, and the reasons for its being in the 11th section not existing for its being in the 12th, it is not to be considered as applying to cases transferred from State courts to the Circuit Court under this latter section.

ERROR to the Circuit Court for the District of Louisiana; the case being thus:

The 11th section of the Judiciary Act, a section which defines the original jurisdiction of the Circuit Courts,* enacts:

"That the Circuit Courts shall have *original* cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, when the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and the United States are plaintiffs or petitioners, . . . or the suit is between a citizen of the State where the suit is brought and a citizen of another State."

But the section gives this original cognizance subject to two limitations, of which one runs thus:

"Nor shall any District or Circuit Court have cognizance of any suit to recover the contents of any promissory note or *other chose in action in favor of an assignee,* unless a suit might have been prosecuted in such court to recover *the said contents if no assignment had been made,* except in cases of foreign bills of exchange."

---

* 1 Stat. at Large, 78.

Having thus conferred and limited the original jurisdiction, the act in the 12th section provides:

"That if a suit be commenced in any State court against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State, . . . and the defendant shall, at the time of entering his appearance in such State court, file a petition for the *removal* of the cause for trial into the next Circuit Court, . . . it shall then be the duty of the State court to accept the surety, and proceed no further in the cause, . . . and *the cause shall then proceed in the same manner as if it had been brought by original process.*"* ·

With these enactments in force, Kennedy & Co., merchants of New Orleans, brought suit against Bushnell, to recover from him the balance of ten thousand dollars, which had been intrusted or lent by them to Mills & Frisby, doing business at Baton Rouge, for the purchase of cotton, to be shipped to the firm in New Orleans. Bushnell borrowed the whole sum of Mills & Frisby under a promise to return it within six days; repaid, in fact, twenty-five hundred dollars, but failed to refund the balance. Thereupon, Mills & Frisby assigned all their claim to the debt of Bushnell to Kennedy & Co., who filed their petition against him in the Third District Court of New Orleans, and prayed a writ of attachment, which was issued accordingly.

Certain parties, resident in New Orleans, were made garnishees, and required to answer interrogatories touching the moneys, credits, or property of Bushnell in their hands, or under their control. These interrogatories were answered by the peremptory denial of the garnishees that they had in their hands, or under their control, anything belonging to Bushnell. Afterwards, a citation was issued against Bushnell, and served personally upon him, requiring an answer to the petition. Thereupon he appeared and filed a petition, averring that all the members of the firm of Kennedy & Co. were citizens of Louisiana, and that he was a citizen of Connecticut, and prayed that the suit might be removed into

---

* 1 Stat. at Large, 79.

the Circuit Court of the United States for the District of Louisiana. This petition was allowed, and the cause removed according to its prayer. But, by an order of the Circuit Court, the suit was remanded to the State District Court, and it was this order which was brought here for revision by the writ of error.

That Kennedy & Co., as assignees of Mills & Frisby, were entitled, under the laws of Louisiana, to sue in the State court upon the debt assigned to them, in their own names, was apparently conceded upon the argument at the bar. But it seemed to have been the opinion of the Circuit Court that they could not maintain a suit in that character in a court of the United States without averring in their petition that their assignors, Mills & Frisby, were citizens of another State than the defendant, entitled, if no assignment had been made, to maintain suit upon the debt against the defendant; the ground of this opinion, doubtless, having been the disability to sue in the National courts, imposed by the already quoted 11th section of the Judiciary Act upon the assignees of a *chose in action*, in cases of which those courts would not have jurisdiction if the suit were brought by the assignors.

*Mr. Durant, in support of the order below :*

A suit brought by original process in a Circuit Court of the United States, on a *chose in action* assigned to the plaintiff, must show on the face of the record that the action could be maintained under the jurisdiction of the court if no assignment had been made;* but the petition originally filed in the State court, and transferred to the United States Circuit Court, does not show on its face that the parties, Mills & Frisby, who assigned the claim sued on to Kennedy & Co., could have brought suit against Bushnell by original process in the Circuit Court. The Circuit Court was, therefore, on the face of the record, without jurisdiction.

The theory of the 11th section of the Judiciary Act of 1789 is, that the civic title or quality of citizenship pertain-

---

* Turner *v.* Bank of North America, 4 Dallas, 8; Mollan *v.* Torrance, 9 Wheaton, 538.

ing to him who assigns a *chose in action* is transferred by the assignment to the assignee, and will disqualify the latter, however qualified otherwise he may be, from suing in the Circuit Court, if the former were himself disqualified; and if his quality be not affirmatively set forth, it is as if he were presumed to be disqualified, and the suit cannot be maintained; or, as an equivalent expression, the citizenship of the assignor of the *chose in action* must be alleged in the petition. This necessity goes into the 12th section, which expressly enacts that the cause, when transferred, shall "proceed in the same manner as if it had been brought by original process." Had this cause been brought by original process, confessedly it would have been dismissed.

*Mr. Ashton, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

That the indebtedness of Bushnell to Mills & Frisby was a *chose in action* cannot be doubted; for under that comprehensive description are included all debts and all claims for damages for breach of contract, or for torts connected with contract. Nor can it be denied that every suitor who brings an action in a court of the United States must aver in his pleadings a state of facts which, under the National Constitution and laws, gives to the court jurisdiction of his suit.[*]

In the case before us the suit was brought in the State court, where no question of jurisdiction, founded upon citizenship, could arise. In that court, therefore, there was no necessity for any averment in respect to citizenship. But under the 12th section of the Judiciary Act, any defendant, being a citizen of another State than the plaintiff or petitioner, is entitled, upon application at the proper time, to have his cause removed to a Circuit Court of the United States; and in the case under consideration, the defendant filed his petition, averring the requisite facts as to his own citizenship and the citizenship of the petitioners, and, thereupon, obtained an order for removal.

---

[*] Turner *v.* Bank of North America, 4 Dallas, 8.

The order was, doubtless, rightly made.  The jurisdiction of the cause was regularly transferred to the Circuit Court, and the cause stood in that court as if brought there by original process.  The jurisdiction thus acquired by the Circuit Court was in no sense appellate.  Removal, under our peculiar system of State and National jurisdictions, is simply a mode in which the right to resort under certain circumstances to the latter rather than the former is secured to defendants as well as plaintiffs.

Two questions, then, arise in this cause:

(1st.) Whether the 11th section of the Judiciary Act applies to a suit instituted by the assignees of such a *chose in action* as is shown in the pleadings? and—

(2d.) Whether valid objection can be taken to jurisdiction of such a suit when removed to the Circuit Court by the defendant under the 12th section.

Upon the first question, it may be observed that the denial of jurisdiction of suits by assignees has never been taken in an absolutely literal sense.  It has been held that suits upon notes payable to a particular individual or to bearer may be maintained by the holder, without any allegation of citizenship of the original payee; though it is not to be doubted that the holder's title to the note could only be derived through transfer or assignment.[*]  So, too, it has been decided, where the assignment was by will, that the restriction is not applicable to the representative of the decedent.[†] And it has also been determined that the assignee of a *chose in action* may maintain a suit in the Circuit Court to recover possession of the specific thing, or damages for its wrongful caption or detention, though the court would have no jurisdiction of the suit if brought by the assignors.[‡]  And it has recently[§] been very strongly argued that the restriction applies only to contracts " which may be properly said to have

[*] Bullard *v.* Bell, 1 Mason, 259 (1817); Bank of Kentucky *v.* Wister, 2 Peters, 321 (1829).

[†] Chappedelaine *v.* Dechenaux, 4 Cranch, 308 (1808).

[‡] Deshler *v.* Dodge, 16 Howard, 631 (1853).

[§] Barney *v.* Globe Bank, 2 American Law Register, N. S., 229 (1862)

contents;" "not mere naked rights of action founded on some wrongful act, some neglect of duty to which the law attaches damages, but rights of action founded on contracts which contain within themselves some promise or duty to be performed."

And this view of the restriction seems to be warranted by the consideration of the mischief which it was intended to prevent. Not a little apprehension was excited at the time of the adoption of the Constitution in respect to the extent of the jurisdiction vested in the National courts; and that apprehension was respected in the Judiciary Act, which soon afterwards received the sanction of Congress. It was obvious that numerous suits, by assignees, under assignments made for the express purpose of giving jurisdiction, would be brought in those courts if the right of assignees to sue was left unrestricted. It was to prevent that evil and to keep the jurisdiction of the National courts within just limits that the restriction was put into the act.

This view has the sanction of Chief Justice Marshall, who, in the case of the *Bank of the United States* v. *The Planters' Bank of Georgia,*\* used this language : " It was apprehended that bonds and notes given in the usual course of business, by citizens of the same State to each other, might be assigned to the citizens of another State, and thus render the maker liable to a suit in a Federal court."

And when it is remembered what class of actions it is, which, upon the principles of the common law, can be maintained by an assignee in his own name, it may well be admitted that it would not have been an unreasonable construction of the restriction if it had been applied only to notes, bonds, and other written contracts, containing promises to pay money, upon which an assignee could sue without using the name of the assignor. Of such contracts, certainly, it may with more propriety be said that they have " contents," than of claims for damages arising either from torts or from breaches of contracts.

---

\* 9 Wheaton, 904 (1824).

It is true that at an earlier day a different construction was given to it. In *Sere* v. *Pitot*,* it was held that an assignee, by act of the law, as the general assignee of the effects of an insolvent, could not sue in the Circuit Court unless the insolvent himself might sue. It is not easy to reconcile this opinion with the later judgments; but it is not necessary now to determine definitely the true construction of the restriction, as we think that the jurisdiction of the Circuit Court over the cause before us can be well supported on the 12th section. That section, as we have already stated, provides for the removal of suits by defendants. The restriction in the 11th section is not found in the 12th. Nor does the reason for the restriction exist. In the 11th section its office was to prevent frauds upon the jurisdiction, and vexation of defendants, by assignments made for the purpose of having suits brought in the name of assignees, but in reality for the benefit of assignors. In the 12th it would have no office, for the removal of suits could not operate as a fraud on jurisdiction, and was a privilege of defendants, not a hardship upon them.

It is true, indeed, as was said in argument, that the section provides that after removal "the cause shall then proceed in the same manner as if it had been brought by original process;" but we cannot recognize the validity of the inference that the defendant, before pleading in the Circuit Court, may move to dismiss the suit for want of jurisdiction. This construction would enable the non-resident defendant in a State court to remove the suit against him into a Circuit Court, and then, by a simple motion to dismiss, defeat the jurisdiction of both courts. Such a construction, unless imperatively required by the plain language of the act, is wholly inadmissible. And it is clear that the language of the act does not require it. Its plain meaning is that the suit shall proceed, not that it shall proceed unless the defendant moves to dismiss. The defendant is not in court against his consent, but by his own act, and the suit is to proceed as if brought

* 6 Cranch, 332.

by original process, and the defendant had waived all exception to jurisdiction, and pleaded to the merits. Under the 11th section the exception to jurisdiction is the privilege of the defendant, and may be waived; for the suit is still between citizens of different States, and the jurisdiction still appears in the record. The first act of the defendant, indeed, under the 12th section, is something more than consent, something more than a waiver of objection to jurisdiction, it is a prayer for the privilege of resorting to Federal jurisdiction, and he cannot be permitted afterwards to question it.*

We cannot doubt, therefore, that the Circuit Court had jurisdiction of the case under consideration. We are all of opinion that the court erred in remanding the cause to the jurisdiction of the State court, and the order to that effect must be                                        REVERSED.

---

* Sayles *v.* Northwestern Insurance Co., 2 Curtis, 212.