## FERRY *v.* TOWN OF MERRIMACK and others.

*(Circuit Court, W. D. Wisconsin.   December Term, 1883.)*

1. REMOVAL OF CAUSE—ACTION ON NON-NEGOTIABLE INSTRUMENT—DIVERSITY OF CITIZENSHIP.

     Where a cause of action upon a contract not negotiable, between citizens of the same state, is assigned to a citizen of another state, who brings suit thereon in the state court, such suit cannot be removed into the circuit court of the United States.

     *Bushnell* v. *Kennedy*, 9 Wall. 392, and *City of Lexington* v. *Butler*, 14 Wall. 282, distinguished; and *Berger* v. *Douglas Co.* 5 FED. REP. 23, and *Hardin* v. *Olson*, 14 FED. REP. 705, followed.

2. SAME—CITIZENSHIP AT TIME OF INSTITUTION OF SUIT.

     The requisite citizenship of the parties must exist, under the act of 1875, both when the suit is begun and when the petition for removal is filed, to entitle a party to have the cause removed from the state court.

In Equity.

*James H. Flanders* and *E. Mariner*, complainant's solicitors.

*Sloan, Stevens & Morris*, defendants' solicitors.

BUNN, J.   This cause was heard before the court in February, 1879, and a partial decision rendered by his honor the circuit judge, sitting with the district judge.   But a final decision upon the merits was reserved until further argument could be had upon certain questions.   These questions have been argued, and the case comes up for final decision.   Chapter 172 of the Private and Local Laws of Wisconsin for the year 1870, entitled "An act to incorporate the Baraboo Air-line Railroad Company," provided, in section 20 of the act, that any town or towns in certain named counties should be authorized to subscribe to the capital stock of the company and issue its bonds, upon certain terms and conditions:   *First,* that the route of said road should be first surveyed, located, and established; *second,* that a majority of the legal voters of said town should, at a general or special town meeting, first vote in favor of said subscription and determine the amount thereof.

Sections 21 and 22 provide for the holding of general and special town meetings to vote on the question of subscribing for stock, and the amount.

Section 23 provides for a subscription to its capital stock, and imposes further conditions for the subscription, as follows:

    "In case the towns of said counties, or any of them, shall vote in favor of a subscription to the capital stock of said company to an amount, in the aggregate, of five hundred and fifty thousand dollars, the chairman of the board of supervisors of each town, that shall vote in favor of said subscription, shall, on behalf of his town, upon the completion of said railroad into his town in good running order, and not before, subscribe to the capital stock of said company to the amount for which his town shall so have voted, and thereupon stock shall be issued to said towns, respectively, to such amount; and in payment thereof, the chairman of the board of supervisors of and for

each of those towns, respectively, shall issue to said railroad company the bonds of said towns, respectively, to the amount of their respective subscriptions as aforesaid."

By section 4 all the affairs of the company are to be managed by a board of nine directors, who are to be chosen annually by the stockholders; each stockholder to have one vote for each share of stock held by him.

By section 27 the chairman of the board of supervisors of each of said towns, by himself or by proxy, may represent his town at any meeting of the stockholders of said company, and cast the vote or votes to which his town may be entitled.

The town of Merrimack, in Sauk county, in August, 1870, held a special town meeting, and voted to subscribe stock to the amount of $10,-000. In the summer of 1871 the road contemplated by said act was built, not by the company organized therefor, but by the Chicago & Northwestern Railroad Company, under an agreement entered into between the two companies in July, 1870. The town of Merrimack, however, refused to subscribe for stock, or to issue its bonds, and no subscription has ever been made or bonds issued, and this suit is brought for the purpose of compelling the town to issue its bonds to the Chicago & Northwestern Railroad Company, which built the road, and with which the Baraboo Air-line Company, on March 10, 1871, was consolidated, by means of articles of consolidation entered into between the two companies, and the effect of which was to extinguish the Baraboo Air-line Railroad Company; all its corporate rights and franchises being transferred to the Chicago & Northwestern Railroad Company. This consolidation was authorized by chapter 73 of the Private and Local Laws of Wisconsin for 1871, approved February 17, 1871. At the time the agreement was made for the consolidation of the road by the Chicago & Northwestern Company, in July, 1870, and at the time of the voting of the subscription, in August, 1870, there was no law of the state authorizing the consolidation of the companies. In 1877 the Chicago & Northwestern Railroad Company, the new and consolidated company organized by said act of the legislature of Wisconsin, transferred by an instrument in writing to this plaintiff, all its rights to an issue of bonds by the defendant town. This suit was first brought by the plaintiff in the state court of Wisconsin, and afterwards removed to this court upon petition setting up that he was a citizen of the state of Illinois.

This court, in its former partial decision of the case, held that there was no irregularity in the calling of the meeting or taking of the vote by the electors of the town upon the question of making the subscription that would affect the legality of such vote, and also that there had been sufficient compliance with the conditions of the act of 1870, in regard to the survey and location of the road through the town, previous to the taking of the vote. But there were other questions in the case not passed upon by the court, some of which it

will be our duty now to consider. And first there is a question of jurisdiction, which, though not very much discussed by counsel, was referred to and is fairly presented by the record. The Chicago & Northwestern Railway Company, as appears by the record, is a corporation created by the laws of Wisconsin, and was, at the commencement of the suit, and when the transactions detailed in the evidence took place, a citizen of Wisconsin. The question, then, is, how does this plaintiff come to his right to sue in this court upon a cause of action upon contract not negotiable, derived by assignment from a citizen of the same state where the defendant resides, and who could not itself maintain the action?

It is contended by the plaintiff that the restriction upon the right to maintain suits in the federal courts upon such demands, contained in section 1 of the act of 1875, applies only to cases originally brought in this court, and not to cases like this, that are removed from the state to the federal court. If this question were an original one, now for the first time to be adjudicated, I would have no hesitation in holding that sections 1 and 2 of the act of 1875 should be construed together, so as to give full effect to the restriction contained in the first section against the bringing of suits upon assigned claims. The purpose of that restriction is apparent, and is well stated in *Bushnell* v. *Kennedy,* 9 Wall. 392, which is claimed as decisive in favor of jurisdiction in this case. *It was to prevent frauds upon the jurisdiction of the federal court.* The supreme court say in that case:

"Not a little apprehension was excited at the time of the adoption of the constitution in respect to the extent of the jurisdiction vested in the national courts, and that apprehension was respected in the judiciary act, which soon afterwards received the sanction of congress. It was obvious that numerous suits by assignees, under assignments made for the express purpose of giving jurisdiction, would be brought in those courts if the right of assignees to sue was left unrestricted. It was to prevent that evil, and to keep the jurisdiction of the national courts within just limits, that the restriction was put into the act."

Again, speaking of the provisions of the act of 1789, the court say:

"That section [12] * * * provides for the removal of suits by defendants. The restriction in the eleventh section is not found in the twelfth. Nor does the reason for the restriction exist. In the eleventh section its office was to prevent fraud upon the jurisdiction and vexation of defendants by assignments made for the purpose of having suits brought in the name of assignees, but in reality for the benefit of the assignors. In the twelfth section it would have no office, for the removal of suits could not operate as a fraud on jurisdiction, and was a privilege of defendants, not a hardship upon them."

That decision gives full effect to the restriction contained in section 11 of the judiciary act of 1789. But if the decision be made to apply to the provisions of sections 1 and 2 of the act of 1875, we are forced to give the statute a construction which will defeat the purpose congress had in view in both the enactments containing this assignment clause. Section 12 of the act of 1789, under which

*Bushnell* v. *Kennedy* was decided, provided that when suit was brought in any state court against an alien, or by a citizen of the state in which the suit is brought, against a citizen of another state, the defendant should have the right of removal to the federal court. It will be seen that the right of removal under this statute is confined to the case of a defendant sued in a state where he does not reside, but who is an alien or citizen of another state. The plaintiff could not remove the case, neither could the defendant, if sued in his own state, although by a citizen of another state. There was, therefore, no danger of any frauds being committed upon the jurisdiction of the federal court in removal cases. The danger of such frauds lay with the plaintiff and his assignor. The defendant was in no position to commit them, and he alone could remove the case. There was, then, no need in section 12 for repeating the restriction contained in section 11 against taking jurisdiction in case of assigned claims, and of course no need of any judicial construction which should extend any portion of the force of section 12 to section 11, as each section was capable of an independent, fair construction, which would carry into full effect the purpose of congress in the enactment.

But by sections 1 and 2 of the act of 1875 the jurisdiction of the federal court is greatly enlarged, and especially in removal cases. By section 2, in any controversy between citizens of different states, when the matter in dispute exceeds $500, either party may remove the suit to the circuit court of the United States. So that if the construction given to sections 11 and 12 of the judiciary act of 1789, in *Bushnell* v. *Kennedy*, that the restriction contained in the eleventh has no application in the twelfth section, is to be transferred bodily from the former law, where it had a suitable and proper fitting, to the new enactment, the results will be something rather wonderful to contemplate, and could scarcely have been foreseen by congress. The result will be that in every controversy arising upon contract between citizens of the same state the moving party has it in his power, by assigning his claim to a non-resident of the state and having the action first begun in the state court and then removed, to draw the litigation into the federal court. Such an application of the case of *Bushnell* v. *Kennedy* will render nugatory the clause against taking jurisdiction of controversies upon assigned claims upon contract, and defeat the purpose congress must have had in view by the enactment, and which purpose is so well stated and so faithfully respected by the supreme court in their decision.

Looking at the purpose of the national constitution and of congress, which was to leave to the state courts intact the jurisdiction of all matters of controversy arising between citizens of the same state except those arising under the federal constitution and laws, and to invest and surround that jurisdiction with proper safeguards against encroachments of the federal power, I cannot believe that the supreme court, in *Bushnell* v. *Kennedy* would have given the con-

struction contended for to the act of 1875 if the question in that case had arisen under that act. The decision was made with reference to the law as it then was, in 1869, and it is very unsafe to apply without proper discrimination that decision to a law so very different in its terms as that of the enactment of 1875. I think it will be much safer, and come nearer carrying out the spirit and effect of that decision, to give the law of 1875 a construction which will carry into effect the evident purpose of congress in the enactment. This, we think, can be done only by construing sections 1 and 2 together as one enactment, and giving proper effect to both. If construed separately and independently, no doubt the first section would deny to this court jurisdiction in this case, and section 2 would give jurisdiction. The first section reads:

"Nor shall any *circuit or district court have cognizance* of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon, if no assignment had been made, except in cases of promissory notes negotiable by the law-merchant and bills of exchange."

Certainly, if this language is to be construed according to its natural import, it is sufficient to deprive the court of jurisdiction in every such case, no matter in what manner it is sought to bring the case here. This is not a provision that no such suit shall be *originally brought* in the circuit court. It is that the court shall not have cognizance of any such suit, and the language is general, and applies just as appropriately to removal cases, as to cases originally brought in this court. The language, if it were to receive a construction independent of the next section, amounts to a total denial and deprivation, on the part of the federal court, of all jurisdiction in these assignment cases. If the court cannot have cognizance of any such case, how can it assume jurisdiction in one way more than in another? On the other hand, section 2, if construed independently, would clearly give the jurisdiction in all this class of cases, where it is denied by section 1. By this section, if independently and literally construed, either party, in any controversy between citizens of different states, when the amount in controversy exceeds $500, may remove the cause, when begun in the state court, to the United States circuit court for the proper district.

It seems to me, in view of the radical change in the removal law adopted for the first time in this provision, giving to the plaintiff as well as the defendant the right to remove, and considering the manifest intention of congress in the enactment of 1789, and in the reenactment of a similar provision in the law of 1875, restricting the jurisdiction in case of assigned causes of action upon contract, that the two sections should be taken together as one enactment, and due and proper effect given to both. There would be no reason or consistency in giving the federal court jurisdiction of assignment cases, removed by the plaintiff from the state court, and denying jurisdic-

tion of the same causes of action in case suit was originally brought in the circuit court; and I cannot think such was the intention of congress. Such a construction practically nullifies the assignment clause. Because, as has been seen, all the moving party has to do to evade the law, is to assign his contract to a non-resident, have a suit brought by the assignee in the state court, and immediately make application for a removal to the federal tribunal. And in this way the entire jurisdiction of the ordinary litigation arising upon contracts between citizens of the same state may be drawn to and swallowed up by the federal courts. That such a construction or result is at all necessary, or could have ever been contemplated by congress, or by the supreme court in *Bushnell* v. *Kennedy*, I cannot bring myself to believe. The jurisdiction of the federal courts is broad enough now without the aid of judicial construction to extend it.

It must be presumed that the intention of congress was the same in re-enacting this provision in the law of 1875, that it was in the original enactment of 1789. It was, as the supreme court say, to prevent frauds upon the jurisdiction and the vexation of defendants, by drawing controversies really between citizens of the same state, arising upon contracts made between them, and more properly cognizable in the state court, into the federal tribunals. These ends were to be accomplished by an absolute denial of the right of an assignee, whether he became such by a real or by a merely colorable assignment, to sue in the federal courts, when his assignor had not such citizenship as entitled *him* to sue in that court. Under the act of 1789 it was deemed sufficient protection against such frauds to withhold from all assignees the right to sue where their assignors could not have sued, restricting the right of removal to the defendant. The law of 1875 preserves and continues the same restriction of the right of assignees to sue in the federal courts. But of what practical value is this restriction, if the extension by the act of 1875 of the right of removal to either party is to be interpreted as permitting a plaintiff assignee, who could not sue in the federal courts, to invoke the jurisdiction of that court by means of the very simple device of first beginning his action in the state court, and turning around and removing it by petition to the federal tribunal.

There has been no adjudication by the supreme court upon this question under the act of 1875. *Bushnell* v. *Kennedy* was decided, as we have seen, under the original judiciary act. The case of *City of Lexington* v. *Butler*, 14 Wall. 282, was under the local prejudice act of 1867, which provided that either party might, in certain cases, remove the case from the state to the federal court by making an affidavit of prejudice or local influence. But it was held, and very justly, in that case, that it was not one coming within the prohibition of section 11 of the judiciary act. Butler, a citizen of Ohio, sued in a Kentucky court upon certain coupons payable to bearer, being also the holder of the bonds, which, although originally payable to order,

had been indorsed in blank by the payee. The court ruled that both the coupons and bonds passed by delivery; that Butler, therefore, did not derive his title or sue as assignee of a contract, within the meaning of section 11 of the act of 1789, but as the lawful holder of negotiable paper by the law-merchant, and could therefore sue in the United States circuit court without reference to the citizenship of any of the prior holders of the bonds and coupons. If he might have brought the suit in the federal court originally, of course he could remove it from the state court by making the affidavit of prejudice which the law provided. The same doctrine, in regard to the negotiable character of such bonds and coupons, had before been settled in *White* v. *Railroad Co.* 21 How. 576, and *Thomson* v. *Lee Co.* 3 Wall. 331, and has since been affirmed in numerous decisions, and is familiar law everywhere to-day. They come within the exception of notes and bills of exchange negotiable by the law-merchant, contained in the act of 1875, passing by delivery, without any formal assignment. This exception in the prohibition against taking jurisdiction of suits upon claims arising through assignments of contracts was, no doubt, made for the benefit of commerce. It was intended that notes and bills running to bearer or order should circulate through all the states with entire freedom, and this exception in the law was made to further that purpose. After thus placing the plaintiff's right to sue in the United States circuit court, without reference to the assignment clause of section 11, upon impregnable grounds, thereby vindicating his right of removal under the act of 1867, Mr. Justice CLIFFORD proceeds to say:

"Suppose, however, the rule is otherwise, still the objection must be overruled, as the suit was not originally commenced in the circuit court. Suit may properly be removed from a state court into the circuit court, in cases where the jurisdiction of the circuit court, if the suit had been originally commenced there, could not have been sustained, as the twelfth section of the judiciary act does not contain any such restriction as that contained in the eleventh section."

—And cites *Bushnell* v. *Kennedy* as authority.

If the remarks of Justice CLIFFORD upon this point are to be taken as the decision of the court, perhaps the decision would be an authority under the act of 1875, though the effect of such a decision under that act would be much more deplorable than under the act of 1867. But it must, I think, be said of this case—*First*, that the second ground upon which Mr. Justice CLIFFORD sustained the right of removal was unnecessary to be determined because the first effectually disposed of the case; and, *second*, if the first question was properly decided, as nobody doubts it was, then the second question was not in the case, nor before the court for adjudication. If Butler was not an assignee within the meaning of section 16, but had a right to bring his action in the federal court in Kentucky from the fact that he was a citizen of Ohio, and held notes and bills

against the defendant negotiable by the law-merchant and transferable by delivery, then the question as to whether a non-resident plaintiff, assignee of an assignor who was incapacitated to sue in the federal court, would be affected under the act of 1867 by the restriction in section 11, was not in the case for adjucation. Had Butler held non-negotiable contracts against the defendant as assignee of an assignor who could not have brought suit in the federal court, which is the case at bar, then it would have been necessary to determine whether the act of 1867, in giving the right of removal to either party, whether plaintiff or defendant, permitted the plaintiff to remove the cause, when he could not have brought the case originally in the federal court. But I am compelled to believe that the last question was not in the case, and to consider the remarks of Mr. Justice CLIFFORD upon this part of the case as something *obiter;* at least, as not interposing any obstacle in the way of a proper and consistent construction of the act of 1875. See *Berger* v. *Com'rs Douglas Co.* 5 FED. REP. 23; *Hardin* v. *Olson,* 14 FED. REP. 705, — in which the judge of the seventh circuit has given a like construction to the statute.

There is one other jurisdictional defect in the record. In the petition for removal the plaintiff states that he is a resident of Lake Forest, in the county of Lake, in the state of Illinois, and that he is a citizen of the state of Illinois. The petition was filed May 14, 1877, and the suit began on March 30, 1877. By the decision of the supreme court in *Gibson* v. *Bruce,* decided at the October term, 1882, [2 Sup. Ct. Rep. 873,] it was ruled that the requisite citizenship of the parties should exist both when the suit is begun and when the petition for removal is filed. It does not appear by the record that the plaintiff was a citizen of Illinois when the suit was commenced. These questions being decisive of the case, so far as this court is concerned, it will not be necessary or proper to express any opinion upon the merits.

It may be proper to state that I have conferred with Mr. Justice HARLAN upon the case, and that he concurs in the conclusions arrived at in this opinion.

The case will be remanded to the circuit court for the county of Sauk, Wisconsin, from whence it comes to this court by removal.