CASKEY et al. v. CHENOWETH.

(Circuit Court of Appeals, Fifth Circuit. May 1, 1894.)

No. 150.

1. APPEARANCE—WAIVER OF OBJECTION TO SERVICE OF PROCESS.

Defendants in an action in a state court, in which an attachment was levied on their property, being nonresidents of the state, removed the cause to the United States circuit court, and again to the circuit court at another place. Thereafter they filed an answer, raising all the merits, but asserting that they reserved their rights as nonresidents, and also filed a motion to quash the attachment, asserting that they appeared for the purpose of the motion only, whereupon the attachment was quashed. *Held*, that they could not afterwards question the sufficiency of the service on them of the citation in the suit.

2. VENDOR AND PURCHASER—REPUDIATION OF CONTRACT BY PURCHASER—DEFECTS IN VENDOR'S TITLE.

In an action for breach of a contract by which plaintiff agreed, in payment for merchandise bought of defendants, to pay $1,000 and convey certain lands, it appeared that he could not give title to the lands, but there was evidence that defendants had repudiated the contract before actual default on plaintiff's part, and also evidence to the contrary. *Held*, that it was error, without submitting to the jury the question as to default on defendants' part, to direct a verdict for plaintiff for the $1,000 which he had paid.

In Error to Circuit Court of the United States for the Northern District of Texas, at Dallas.

This was an action by J. W. Chenoweth against John Caskey and W. J. Wilkes for damages for breach of contract, brought in a court of the state of Texas, and removed therefrom by defendants. At the trial in the circuit court, the judge directed the jury to find for plaintiff. Judgment for plaintiff was entered on the verdict. Defendants brought error.

On September 24, 1891, the plaintiffs in error, John Caskey and W. J. Wilkes, composing the firm of Caskey & Wilkes, then engaged in mercantile business in Ft. Worth, Tex., contracted in writing with defendant in error, J. W. Chenoweth, to sell him their stock of merchandise at invoice prices, with 5 per cent. added, and Chenoweth agreed to pay for same as follows: $1,000 cash when stock was tendered for invoice; "also, to convey, by good and sufficient warranty deed, sections 13, 15, 23, 53, and the north 229 acres of section 55, all in block 16, Texas & Pacific reservation lands in Taylor county, Texas." The contract also provided: "Said Chenoweth also represents that he has good title to said land, and that the same is clear and free from any lien or incumbrance whatever, except a lien of $3,746.20, and that at least 60 per cent. of said land is substantially free from breaks and gravel; and said Chenoweth agrees to furnish complete abstracts of title to said land, bringing title down to time of conveyance herein agreed to be made." It was provided in contract that Caskey & Wilkes should take the land hereinbefore described, as a payment upon the stock of goods, at the sum of $8,094, and subject to the lien of $3,746.20. It was further provided that the invoice should be commenced September 28, 1891. Detailed pro-

vision was also made as to the execution of notes for the balance of the amount for which stock should invoice, but this is not deemed material here. Chenoweth not being ready on the 28th, invoice was not commenced until October 1st, at which time he paid the $1,000 cash provided in the contract. The invoice was completed October 9th, and the amount was found to be $22,116.65. Both parties assisted in the invoice, and both were at considerable expense therein, which fully appears in the evidence. At the close of the invoice, Chenoweth handed Caskey & Wilkes five abstracts of title, one for each of the tracts named in the contract. They were certified, of date September 21, 1891, as being complete abstracts of the records of Taylor county, Tex., affecting the title to said lands. These abstracts (except for missing deeds, patents, and other matters hereinafter specified) brought the title down to the Interstate Railway & Construction Company, subject to a vendor's lien on each tract in favor of the Franco-Texan Land Company. At the same time, Chenoweth handed to Caskey & Wilkes five instruments, not recorded, and not shown in the abstract, releasing the liens of the Franco-Texan Land Company; also, five warranty deeds from the Interstate Railway & Construction Company to Chenoweth, dated in June, 1891, but not recorded, and not shown in the abstracts. It appears from Chenoweth's evidence that these deeds were delivered to him in June, 1891. The abstracts were in the usual form, but contained no abstract of the patents to these· lands, the patents not having been recorded. One of the instruments shown in each of said abstracts was a deed of trust from the Texas & Pacific Railway Company to the Fidelity Insurance, Trust & Safe-Deposit Company, dated prior to the date of the patents. In this deed of trust it apears that said railway company had, for one dollar and other considerations (not named in the abstract), conveyed to the Fidelity, etc., Company all lands said railway company had or should acquire from the state of Texas for building the Rio Grande division of said road; the abstracts stating "that the conditions and stipulations of said trust deed cover twelve pages, and are too voluminous to set out." The abstracts also showed that there were two deeds missing to complete the chain of title, even down to the Interstate, etc., Company. One of the lacking deeds was from the Fidelity, etc., Company to Duncan Sherman & Grain, and this Chenoweth handed to defendants next day. This deed, though not appearing in the "complete abstracts," showed that it had been recorded prior to September 21, 1891, the date abstracts were certified. The other lacking deed, which had not been recorded, and did not appear in the abstracts, was from Duncan Sherman & Grain to the Franco-Texan Land Company. This latter deed, Chenoweth informed defendants, was in possession of Robertson & Coke, attorneys at Dallas, to be used as evidence in a suit in the federal court, but Chenoweth furnished no proof or statement showing that said suit did not affect the title to said lands. Chenoweth procured this deed on October 13th. On October 14th, Chenoweth made another tender to defendants, tendering them the following: (1) The five abstracts already described; (2) the five patents from the state to the Fidelity, etc., Company for the lands in contract, "as assignee for the Texas & Pacific Railway Company;" (3) the five releases of liens by the Franco-Texan Land Company; (4) the five deeds from the Interstate Railway & Construction Company to Chenoweth; (5) the deed from Duncan Sherman & Grain to the Franco-Texan Land Company; (6) the deed from the Fidelity Insurance, etc., Co. to Duncan Sherman & Grain; (7) warranty deed from Chenoweth to lands in contract; (8) notes according to contract, and money enough to pay for recording instruments not recorded. Caskey and Wilkes declined to accept the tender, and did not pay back to Chenoweth the $1,000 cash he had paid on the contract. About 200 acres of the land was not in Taylor but in Jones county, and Chenoweth furnished no abstract from Jones county records. It appears from the evidence of Wilkes that defendants requested Chenoweth to procure from Robertson & Coke a certificate concerning the unrecorded deed held by them for use as evidence in a lawsuit, showing that titles to lands in contract were not affected by said suit, but this Chenoweth failed to do.

In December, 1891, Chenoweth brought suit on the contract in the district court of Wise county, Tex., alleging performance on his part and breach by defendants, and claiming $6,158 damages, and caused a large amount of

defendants' property to be levied on under writ of attachment. The attachment was based upon the fact that defendants were nonresidents of the state of Texas. On February 1, 1892, Caskey & Wilkes filed a petition in the district court of Wise county, and therein, asserting that they specially appear for the purposes set forth in the petition, alleged as follows: "That the controversy in said suit is between citizens of different states, and that the petitioners, being all the defendants in above-entitled suits, were at the time of the commencement of said suit, and still are, citizens of the state of Missouri, and nonresidents of the state of Texas, and the plaintiff in the suit was at the time of the commencement of said suit, and still is, a citizen of the state of Texas; and, tendering bond and security, prayed for an order of removal of the said cause into the circuit court of the United States for the northern district, at Dallas." On the same day the state court, on the petition, and on an agreement between the parties. in writing, that the cause might be transferred, ordered the same to be transferred to the United States court at Dallas. It seems, upon this order of removal, the transcript of the record was filed in the circuit court for the northern district of Texas, at Graham, Graham being the place where the next term of the circuit court for the northern district of Texas was to be held. On the 15th day of March, 1892, the following entry was made at Graham: "This cause coming on to be heard on motion to transfer to Dallas, it is ordered that the same be and is hereby transferred to Dallas by agreement filed." On the 17th of May, Caskey & Wilkes filed in the circuit court for the northern district of Texas, at Dallas, defendants' original answer, in which, after preamble as follows: "Now come the defendants, reserving their rights as nonresidents of this state, and not submitting themselves to the jurisdiction of the court, but appearing only for the purpose hereinafter set out,"—they specially and generally demurred and excepted to the sufficiency of the plaintiff's original petition, and on such demurrers prayed the judgment of the court. On the same day, Caskey & Wilkes filed a motion to quash the attachment on various grounds assigned, and therein again asserted an appearance for the purpose of the motion only, and denying the jurisdiction of the court over their persons. On January 16, 1893, the cause came on to be heard before the circuit court on motion to quash the attachment, and the same on argument was granted, and thereupon it was ordered that the attachment be quashed and set aside, and held for naught. On the 17th day of January, 1893, again came the defendants, by counsel, "for the purpose alone of resisting the jurisdiction of the court herein, and no other, and say that this court cannot exercise jurisdiction over these defendants in this cause, for that both of these defendants reside now, and did reside, in the state of Missouri, at the time of the institution of this suit, and that no citation in this case was ever served upon them, except in the state of Missouri, and by a private person therein, who delivered to these defendants, in said state, certified copies of plaintiff's petition; that writs of attachment were sued out in this state, and levied upon property of these defendants; that these defendants appeared specially, as appears by motion to quash, filed May 17, 1892; and that said motion to quash said attachment has this day been sustained, and said attachment proceedings quashed and held for naught; wherefore, they pray the judgment of the court whether they ought further to answer therein." At the time of filing this motion the counsel for Caskey & Wilkes, reciting the special appearances thereinbefore made in the case, asked leave to withdraw their answer, and for leave to file plea to the jurisdiction, whereupon the court refused to grant defendants leave to withdraw their answer, to which the defendants excepted. Defendants below then filed their first amended original answer, alleging nonperformance on the part of plaintiff, and claiming damages therefor.

On the trial of the case, after the conclusion of the evidence, the court charged the jury as follows: "In this case the jury are instructed that the plaintiff has failed to show title in himself in October, 1891, to the lands he was to put in trade with defendants. You will therefore find for plaintiff one thousand dollars, the amount he paid defendants, with 6 per cent. interest per annum from the date it was paid," the same being the only instruction given by the court to the jury; and the defendants, then and there, before the jury retired, duly excepted to the giving of that part of said

charge which read as follows: "You will therefore find for plaintiff one thousand dollars, the amount he paid defendants, with 6 per cent. interest per annum from the date it was paid,"—and defendants then and there stated the grounds of their said exceptions to be as follows: "(1) Plaintiff's failure to prove title was in itself a breach of the contract, such as to prevent him from any recovery on the case made by his petition. (2) Because, under the undisputed evidence, plaintiff had failed to comply with the contract sued on: hence, defendants were entitled to have their claim for damages submitted to the jury. (3) Because the abstracts of title were not complete,—they not showing the condition of Jones county records as to lands in Jones county; not fully showing the deed of trust to the Fidelity Company; not being brought down to date; not showing any of the seventeen instruments referred to in plaintiff's testimony. (4) Because of the grave doubt left upon the title in the matter of the deed in the hands of Robertson & Coke, without any explanation whatever. (5) Because plaintiff was not ready to comply at the close of the invoice, and it was not shown that he could not, by the use of diligence, have been ready at that time. (6) Because contract contemplated performance at the close of the invoice, and plaintiff, by his own acts, had thus construed it, and had used no diligence; and having failed, and shown no legal excuse, he must be held to have broken the contract. (7) Because the court should have instructed the jury as to what constituted compliance by the respective parties, and left the question of compliance and damages to the jury. (8) Because, even though defendants may have declared the contract off on October 12th, and though it should be held that they had not waited a reasonable time, yet as plaintiff afterwards demanded compliance, and himself attempted to comply, such declaration was no waiver on the part of defendants, and gave plaintiff no rights as against defendants; and, the plaintiff having failed to fully comply on the 14th of October, he committed a breach of the contract, which entitled defendants to have their claim for damages submitted on the evidence introduced." In the bill showing these facts the court said: "In this case it was the opinion of the court that the defendants had repudiated the contract, and kept the $1,000, when the plaintiff was trying to carry it out, and that too after he had substantially furnished abstracts of his title. But the plaintiff failed on trial to show title to himself, at the date of the contract, to the lands he was to convey, from the sovereignty of the soil; hence the above instruction. With this explanation the above exception is approved and allowed, this March 23, 1893." And it further appears that the following instruction was asked by the defendants: "If the jury believe from the evidence, under the instructions given, that the plaintiff failed to comply with the contract on his part, and if you further believe from the evidence that the defendants were ready, able, and willing to comply with the contract at any one time when plaintiff should comply with the contract on his part, then your verdict must be for the defendants,"—which instruction was refused by the court, to which refusal the defendants then and there duly excepted.

J. R. Robinson, for plaintiffs in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge (after stating the facts). The first matter for consideration is the jurisdiction of the circuit court over the plaintiffs in error. If the cause had remained in the state court, then, under the provisions of articles 1242–1245, Rev. St. Tex., as construed by the supreme court of that state, the appearance of the plaintiffs in error specially for the purpose of moving to quash the service upon them, or to quash the attachment issued in the case, would have been properly taken as a general appearance, fully conferring jurisdiction upon the court. See York v. Texas, 137 U. S. 15, 11 Sup. Ct. 9; Kauffman v. Wootters, 138 U. S. 285, 11 Sup. Ct. 298. Irrespective of this, there is excellent

authority for holding that the plaintiffs in error waived any objections to the service of the summons by appearing in the state court, and filing a petition for the removal of the cause to the United States court, and this notwithstanding the appearance was said to be specially for the purposes of removal.     Sayles v. Insurance Co., 2 Curt. 212, Fed Cas. No. 12,421 (opinion by Mr. Justice Curtis); West v. Aurora City, 6 Wall. 139; Bushnell v. Kennedy, 9 Wall. 387; Construction Co. v. Simon, 53 Fed. 1 (opinion by Mr. Justice Jackson).     In the instant case, not only did the plaintiffs in error appear in the state court, and there file a petition for the removal of the cause, but the record shows that after the removal there was an appearance in the circuit court at Graham, which (so far as the record shows) was unqualified, for the purpose of having the cause removed to the circuit court at Dallas for trial, and that in the circuit court at Dallas the plaintiffs in error appeared, and filed an answer raising all the merits of the cause at the same time that they specially appeared, and moved to quash the attachment issued in the case.     It is true, the answer asserts that the plaintiffs in error reserved their rights as nonresidents of the state, and submitted themselves to the jurisdiction of the court only for the purposes of the answer.     It is difficult to see how the plaintiffs in error, by appearance in the circuit court, could have more fully submitted themselves and their cause to the jurisdiction of the court.     Submitting themselves to the jurisdiction of the court for the purposes of the answer was about all that any defendant could do in that behalf. We understand the general rule to be that any appearance of a defendant in court, when sued, for any other purpose than to object to the sufficiency of the service upon him, and move to quash therefor, is to be taken and held as a general appearance in the case.     Certainly, when a defendant who has not been strictly served according to law comes into court in such case to obtain relief, or the benefit of a privilege outside of the sufficiency of the service, he ought not to be heard thereafter to say that the court has no jurisdiction over the case because he has not been properly notified.     In this case it appears that the plaintiffs in error first procured the removal of the cause from the state court to the circuit court at Graham, then a removal from the circuit court at Graham to the circuit court at Dallas, then filed an answer, and thereafter procured the attachment in the case to be dissolved, and yet, after all these proceedings, object that the original service of citation upon them was insufficient in law to bring them into court.

On the merits of the case, the plaintiffs in error complain of the instructions of the court, in directing the jury, as a matter of law, that the plaintiff below was entitled to a verdict for $1,000, the amount he had paid the defendants below, with 6 per cent. interest per annum from the date it was paid, and in refusing to instruct the jury as follows:

"If the jury believe from the evidence, under the instructions given, that the plaintiff failed to comply with the contract on his part, and if you further

believe from the evidence that the defendants were ready, able, and willing to comply with the contract at any one time when plaintiff should comply with the contract on his part, then your verdict must be for the defendants."

It appears that the trial judge was of the opinion—undoubtedly, from his view of the evidence in the case—

"That the defendants had repudiated the contract, and kept the $1,000, when the plaintiff was trying to carry it out; and that too after he had substantially furnished abstracts of his title. But the plaintiff failed on trial to show title in himself, at the date of the contract, to the lands he was to convey, from the sovereignty of the soil."

As we understand this, it means that the plaintiff in the court below could not give title to the lands he had agreed to convey, and yet, while he was trying to carry out the contract, the defendants repudiated the same, and therefore the plaintiff below could recover back the amount he had paid under the contract, and the defendants below could recover no damages for the failure of the plaintiff to perform. It is clear that the plaintiff below was not entitled to recover damages from the defendants below for non-compliance with the contract of sale, since he had failed to comply with the contract on his part.

In this state of the case, whether the plaintiff below was entitled to recover back the moneys paid by him under the contract, and whether the defendants were entitled to recover damages for breach of the contract, depended upon the conduct of the parties, as shown by the evidence in the case. The bill of exceptions recites that substantially all the evidence offered and introduced by either party is therein recited. While there is considerable evidence in the bill tending to show that the defendants below repudiated the contract, and practically rescinded it, prior to the actual default of the plaintiff below, yet there is also considerable evidence tending to show the contrary. From this state of the evidence, as we view it, the question of default on the part of the defendants below should have been submitted to the jury, with instructions that if they found the defendants in default, or that they had repudiated or rescinded the contract prior to the actual default of the plaintiff below, then he might recover back the amount paid under the contract (see Sedg. Dam. § 658; Suth. Dam. § 585); if, on the other hand, they should find from the evidence that the defendants below were not in default, then they would be entitled to recover such damages as directly flowed from the breach of the contract, and were proved by the evidence in the case. We are of the opinion that the assignments of error in relation to the instructions of the court are well taken. The judgment of the circuit court is reversed, and the case remanded, with instructions to grant a new trial.