## SENIOR *v.* BRADEN ET AL.

No. 658.   Argued April 9, 10, 1935.—Decided May 20, 1935.

*Mr. Murray Seasongood,* with whom *Mr. Lester A. Jaffe* was on the reply brief, for appellant.

424

*Mr. John W. Bricker,* Attorney General of Ohio, and *Mr. E. G. Schuessler,* Assistant Attorney General, with whom *Messrs. Louis J. Schneider, Walter M. Locke,* and *Thomas C. Lavery* were on the brief, for appellees.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

January 1, 1932—tax listing day—§ 5328-1, the Ohio General Code [1] provided that all investments and other intangible property of persons residing within the State should be subject to taxation. Section 5323 so defined " investment " as to include incorporeal rights of a pecuniary nature from which income is or may be derived, including equitable interests in land and rents and royalties divided into shares evidenced by transferable certificates. Section 5638 imposed upon productive investments a tax amounting to five percentum of their income yield; and § 5839 defined " income yield " so as to include the aggregate income paid by the trustee to the holder, &c. Pertinent portions of §§ 5388 and 5389 are in the margin.[2]

---

[1] By Act of June 29, 1931 (114 Laws p. 714) providing for levy of taxes on intangible property etc., the Ohio General Assembly amended §§ 5323, 5324, 5325, 5326, 5327, 5328, 5360, 5382, 5385, 5386, 5388, 5389 of the General Code and added supplemental §§ 5325-1, 5328-1, and 5328-2.

[2] " Sec. 5388. * * * Excepting as herein otherwise provided, personal property shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be.

Appellant owned transferable certificates showing that he was beneficiary under seven separate declarations of trust, and entitled to stated portions of rents derived from specified parcels of land—some within Ohio, some without. On account of these beneficial interests he received $2,231.29 during 1931. The lands are adequately described in the margin.[3]

The tax officers of Hamilton County, where appellant resided, threatened to assess these beneficial interests, and then to collect a tax of five percentum of the income there-

Deposits not taxed at the source shall be listed and assessed at the amount thereof in dollars on the day as of which they are required to be listed. Moneys shall be listed and assessed at the amount thereof in dollars on hand on the day as of which they are required to be listed. In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be at the amount of such income yield; but any property defined as investments in either of the first two subparagraphs of section 5323 of the General Code which has yielded no income during such calendar year shall be listed and assessed as unproductive investments, at the true value thereof, in money, on the day as of which such investments are required to be listed. . . .

" Sec. 5389. * * * As used in Section 5388 of the General Code and elsewhere in this chapter, the ' true value in money ' of any property means the usual selling price thereof at the time or times and place as of which it is required to be listed. . . .

" ' Income yield ' as used in section 5388 of the General Code and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners, or holder or holders of an investment, whether including the taxpayer or not, during such year, and includes the following: . . . in the case of equitable interests, the cash distributions of income so made. . . ."

[3] Lincoln Inn Court, Cincinnati, Ohio; Clark-Randolph Building Site, Chicago, Illinois; Woman's City Club, Cincinnati, Ohio; Rockefeller Building, Cleveland, Ohio; Insurance Exchange Building, Boston, Massachusetts; City National Bank Building, Omaha, Nebraska; and Fidelity Mortgage Company, Cleveland, Ohio.

from. To prevent this, he instituted suit in the Common Pleas Court. The petition asked that § 5323, General Code, be declared unconstitutional and that appellees be restrained from taking the threatened action. The trial court granted relief as prayed; the Court of Appeals reversed and its action was approved by the Supreme Court.

With commendable frankness counsel admit that under the Fourteenth Amendment the State has " no power to tax land or interests in land situate beyond its borders; nor has it power to tax land or interests in land situate within the State in any other manner than by uniform rule according to value." Consequently, they say, " if the property of appellant, which the appellees seek to tax in this case, is land or interest in land situate within or without the State, their action is unconstitutional and should be permanently enjoined."

The validity of the tax under the Federal Constitution is challenged. Accordingly we must ascertain for ourselves upon what it was laid. Our concern is with realities, not nomenclature. *Moffitt* v. *Kelly,* 218 U. S. 400, 404, 405; *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 625, 626; *Educational Films Corp.* v. *Ward,* 282 U. S. 379, 387; *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 280. If the thing here sought to be subjected to taxation is really an interest in land, then by concession the proposed tax is not permissible. The suggestion that the record discloses no federal question is without merit.

Three of the parcels of land lie outside Ohio; four within; they were severally conveyed to trustees. The declaration of trust relative to the Clark-Randolph Building Site, Chicago, is typical of those in respect of land beyond Ohio; the one covering East Sixth Street property, Cleveland, is typical of those where the land lies in Ohio, except Lincoln Inn Court, Cincinnati. Each parcel has been assessed for customary taxes in the name of legal owner or lessee according to local law, without

deduction or diminution because of any interest claimed by appellee and others similarly situated.

The trust certificates severally declare—That Max Senior has purchased and paid for and is the owner of an undivided 340/1275ths interest in the Lincoln Inn Court property; that he is registered on the books of the Trustee as the owner of 5/3250ths of the equitable ownership and beneficial interest in the Clark Randolph Building Site, Chicago; that he is the owner of 6/1050ths of the equitable ownership and beneficial interest in the East Sixth Street property, Cleveland. In each declaration the Trustee undertakes to hold and manage the property for the use and benefit of all certificate owners; to collect and distribute among them the rents; and in case of sale to make pro-rata distribution of the proceeds. While certificates and declarations vary in some details, they represent beneficial interests which, for present purposes, are not substantially unlike. Each trustee holds only one piece of land and is free from control by the beneficiaries. They are not joined with it in management. See *Hecht* v. *Malley,* 265 U. S. 144, 147.

The State maintains, that appellant's interest is " a species of intangible personal property consisting of a bundle of equitable choses in action because the provisions of the agreements and declarations of trust of record herein have indelibly and unequivocally stamped that character upon it by giving it all the qualities thereof for purposes of the management and control of the trusts. At the time the trusts were created, the interests of all the beneficiaries consisted merely of a congeries of rights etc., and such was the interest acquired by appellant when he became a party thereto. . . . The rights of the beneficiary consist merely of claims against the various trustees to the pro rata distribution of income, during the continuance of the trusts, and to the pro rata distribution of

the proceeds of a sale of the trust estates upon their termination."

Appellant submits that ownership of the trust certificate is evidence of his interest in the land, legal title to which the trustee holds. This view was definitely accepted by the Attorney General of Ohio in written opinions Nos. 3640 and 3869 (Opinions 1926, pp. 375, 528) wherein he cites pertinent declarations by the courts of Ohio and of other states. See also 2 Cincinnati Law Rev. 255.

The theory entertained by the Supreme Court concerning the nature of appellant's interests is not entirely clear. The following excerpts are from the headnotes of its opinion which in Ohio constitute the law of the case:

" Land trust certificates in the following trusts [the seven described above] are mere evidences of existing rights to participate in the net rentals of the real estate being administered by the respective trusts."

"Ascribing to such certificates all possible virtue, the holder thereof is at best the owner of equitable interests in real estate divided into shares evidenced by transferable certificates. Sec. 5323, General Code (114 Ohio Laws 715) does not provide for a tax against the equitable interests in land but does provide a tax against the income derived from such equitable interests."

Apparently no opinion of any court definitely accepts the theory now advanced by appellees, but some writers do give it approval because of supposed consonance with general legal principles. The conflicting views are elaborated in articles by Professor Scott and Dean Stone in 17 Columbia Law Review (1917) at pp. 269 and 467.

*Maguire* v. *Trefry,* 253 U. S. 12, much relied upon by appellees, does not support their position. There the Massachusetts statute undertook to tax incomes; the securities (personalty) from which the income arose were

held in trust at Philadelphia; income from securities taxable directly to the trustee was not within the statute. The opinion accepted and followed the doctrine of *Blackstone* v. *Miller,* 188 U. S. 189, and *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54. Those cases were disapproved by *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204. They are not in harmony with *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, and views now accepted here in respect of double taxation. See *Baldwin* v. *Missouri,* 281 U. S. 586; *Beidler* v. *South Carolina Tax Comm'n,* 282 U. S. 1; *First National Bank* v. *Maine,* 284 U. S. 312.

In *Brown* v. *Fletcher,* 235 U. S. 589, 597, 599, we had occasion to consider the claim that a beneficial interest in a trust estate amounts to a chose in action and is not an interest in the *res,* subject of the trust. Through Mr. Justice Lamar we there said:

"If the trust estate consisted of land it would not be claimed that a deed conveying seven-tenths interest therein was a chose in action within the meaning of § 24 of the Judicial Code. If the funds had been invested in tangible personal property, there is, as pointed out in the *Bushnell* case [*Bushnell* v. *Kennedy,* 9 Wall. 387, 393], nothing in § 24 to prevent the holder by virtue of a bill of sale from suing for the ' recovery of the specific thing or damages for its wrongful caption or detention.' And if the funds had been converted into cash, it was still so far property—in fact, instead of in action—that the owner, so long as the money retained its earmarks, could recover it or the property into which it can be traced, from those having notice of the trust. In either case, and whatever its form, trust property was held by the Trustee,—not in opposition to the *cestui que trust* so as to give him a chose in action, but—in possession for his benefit in accordance with the terms of the testator's will. . . .

" The beneficiary here had an interest in and to the property that was more than a bare right and much more than a chose in action. For he had an admitted and recognized fixed right to the present enjoyment of the estate with a right to the corpus itself when he reached the age of fifty-five. His estate in the property thus in the possession of the Trustee, for his benefit, though defeasible, was alienable to the same extent as though in his own possession and passed by deed. *Ham* v. *Van Orden*, 84 N. Y. 257, 270; *Stringer* v. *Young, Trustee*, 191 N. Y. 157; 83 N. E. 690; *Lawrence* v. *Bayard*, 7 Paige 70; *Woodward* v. *Woodward*, 16 N. J. (Eq.) 83, 84. The instrument by virtue of which that alienation was evidenced,—whether called a deed, a bill of sale, or an assignment,—was not a chose in action payable to the assignee, but an evidence of the assignee's right, title and estate in and to property."

The doctrine of *Brown* v. *Fletcher* is adequately supported by courts and writers. *Narragansett Mutual Fire Ins. Co.* v. *Burnham*, 51 R. I. 371; 154 Atl. 909; *Bates* v. *Decree of Court*, 131 Me. 176; 160 Atl. 22; Bogert, Handbook of the Law of Trusts, 430; 3 Pomeroy Equity Jurisprudence, Fourth Edition, 1928, § 975, p. 2117; 17 Columbia Law Review, 269, 289. We find no reason for departing from it.

The challenged judgment must be

*Reversed.*

MR. JUSTICE STONE, dissenting.

I think the judgment should be affirmed.

Tax laws are neither contracts nor penal laws. The obligation to pay taxes arises from the unilateral action of government in the exercise of the most plenary of sovereign powers, that to raise revenue to defray the expenses of government and to distribute the burden among those who must bear it. See *Alabama* v. *United States*, 282

U. S. 502, 507. To that obligation are subject all rights of persons and property which enjoy the protection of the sovereign and are within the reach of its power.

For centuries no principle of law has won more ready or universal acceptance. Even now that it is doubted, the doubt is rested on no more substantial foundation than want of " jurisdiction " to tax, and the assertion that the Fourteenth Amendment is endowed with a newly discovered efficacy to forbid " double taxation " when the sovereignty imposing the tax is that of two or more states. See *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 210; *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, 92; *Baldwin* v. *Missouri,* 281 U. S. 586, 593; compare *Burnet* v. *Brooks,* 288 U. S. 378, 400 *et seq.* But as no opinion of this Court has undertaken to define the taxation which is thus forbidden because it is double, or to declare that different legal rights founded upon the same economic interest may never, under any circumstances, be compelled to contribute to the cost of government of two states whose protection they respectively enjoy, it would seem still to be open to inquiry whether the particular tax now imposed infringes any constitutional principle capable of statement and definition.

When we speak of the jurisdiction to tax land or a chattel as being exclusively in the state where it is located, we mean no more than that, in the ordinary case of ownership of tangible property, the legal interests of ownership enjoy the benefit and protection of the laws of that state alone, and that it alone can effectively reach the interests protected for the purpose of subjecting them to the payment of the tax. Other states are said to be without jurisdiction, and so without constitutional power to tax, if they afford no protection to the ownership of the property and cannot lay hold of any interest in the property in order to compel payment of the tax. See *Union Tran-*

*sit Co.* v. *Kentucky,* 199 U. S. 195, 202; *Frick* v. *Pennsylvania,* 268 U. S. 473, 497.

But when new and different legal interests, however named, are created with respect to land or a chattel, of such a character that they do enjoy the benefits of the laws of another state and are brought within the reach of its taxing power, I know of no articulate principle of law or of the Fourteenth Amendment which would deny to the state the right to tax them. No one would doubt the constitutional power of a state to tax its residents on their shares of stock in a foreign corporation whose only property is real estate or chattels located elsewhere, *Darnell* v. *Indiana,* 226 U. S. 390; *Hawley* v. *Malden,* 232 U. S. 1; compare *Corry* v. *Baltimore,* 196 U. S. 466; *Kidd* v. *Alabama,* 188 U. S. 730; *Cream of Wheat Co.* v. *County of Grand Forks,* 253 U. S. 325, 329, or to tax a valuable contract for the purchase of land or chattels located in another state, see *Citizens National Bank* v. *Durr,* 257 U. S. 99, 108; compare *Gish* v. *Shaver,* 140 Ky. 647, 650; 131 S. W. 515; *Golden* v. *Munsiger,* 91 Kan. 820, 823; 139 Pac. 379; *Marquette* v. *Michigan Iron & Land Co.,* 132 Mich. 130; 92 N. W. 934, or to tax a mortgage of real estate located without the state even though the land affords the only source of payment, see *Kirtland* v. *Hotchkiss,* 100 U. S. 491; compare *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421; *Bristol* v. *Washington County,* 177 U. S. 133. Each of these legal interests, it is true, finds its only economic source in the value of the land, and the rights which are elsewhere subjected to the tax can be brought to their ultimate economic fruition only through some means of control of the land itself. But the means of control may be subjected to taxation in the state of its owner, whether it be a share of stock or a contract or a mortgage. There is no want of jurisdiction to tax these interests where they are owned, in the sense that the state

lacks power to appropriate them to the payment of the tax. No court has condemned such action as capricious, arbitrary or oppressive. The Fourteenth Amendment does not forbid it, for it is universally recognized that these interests of themselves are in some measure clothed with the legal incidents of property in the taxing state and enjoy there the benefit and protection of its laws.

Similarly, I do not doubt that a state may tax the income of its citizen derived from land in another state. The right to impose the tax is founded upon the power to exact it, coupled with the protection which the state affords to the taxpayer in the receipt and enjoyment of his income. *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 279. I can perceive no more constitutional objection to imposing such a tax than to the taxation of a citizen on income derived from a business carried on by the taxpayer in another state, and subject to taxation there, which we upheld in *Lawrence* v. *State Tax Comm'n, supra;* see *Cook* v. *Tait,* 265 U. S. 47, or to the tax on income derived from securities having a tax *situs* in another state, upheld in *Maguire* v. *Trefry,* 253 U. S. 12; see also *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54; compare *DeGanay* v. *Lederer,* 250 U. S. 376. The fact that it is now thought by the Court to be necessary to discredit or overrule *Maguire* v. *Trefry, supra,* in order to overturn the tax imposed here, should lead us to doubt the result, rather than the authority which plainly challenges it, and should give us pause before reading into the Fourteenth Amendment so serious and novel a restriction on the vital elements of the taxing power.

The present tax, measured by income, is upon intangible property interests owned by a citizen of Ohio. They are represented by transferable certificates, issued, by trustees of land, under contracts by which each trustee undertakes to hold the title of specified lands in trust for the benefit of the certificate holders; to receive the income and to

pay it over to them ratably, after meeting expenses and depreciation; and to receive and distribute ratably the proceeds of sale of the land if sold under existing options. In the event of default by the lessee, the trustee is given plenary authority to terminate the lease, take possession of the land and sell it, as fully as though it were the sole legal and equitable owner. The trustee is authorized to settle claims upon contract and tort made against the trustee or the trust estate, and is entitled to indemnity from the estate for all personal liability and expenses. It is authorized to borrow money and to give the trust estate as security.

The beneficiaries have no right to possession or to partition of the property, and can maintain no action at law with respect to it. They cannot be assessed, and incur no liability by virtue of the administration of the trust estate. The trust certificates are freely transferable, as are shares of stock in a corporation. The rights of the beneficiaries are so identified with the certificates that they may be transferred only on surrender of the certificate to the trustee. Certificates lost, stolen, or destroyed may be replaced by the trustee at its option and in its discretion. Compare *Selliger* v. *Kentucky,* 213 U. S. 200, 206.

There is thus created an active trust of land, under which the trustee is clothed with all the incidents of legal ownership, and which is given the status of a business entity separate and distinct, for all practical purposes, from the interests of the certificate holders. See *Crocker* v. *Malley,* 249 U. S. 223; *Hecht* v. *Malley,* 265 U. S. 144, 161; *Burk-Waggoner Oil Assn.* v. *Hopkins,* 269 U. S. 110. The beneficiaries have none of the incidents of legal ownership. They can neither take nor defend possession of the land. But they are clothed with rights *in personam,* in form both contractual and equitable, enforcible against the trustee by suit in equity for an accounting, to compel performance of the trust or to restrain breaches of it.

438

Such actions are transitory and maintainable wherever the trustee may be found. *Massie* v. *Watts*, 6 Cranch 148, 158–160; *Beattie* v. *Johnstone*, 8 Hare 169, 177; *Gardner* v. *Ogden*, 22 N. Y. 327, 333–339.

The owner of the certificates in Ohio is thus vested with valuable rights, differing from those of ordinary ownership, including those enforcible against the trustee within as well as without the State. They are brought within the control of the State. These rights, the physical certificates with which they are identified, and the receipt and enjoyment of their income by the owner, are each protected by Ohio laws. If we look to substance rather than form, to the principles which underlie and justify the taxing power, rather than to descriptive terminology which, merely as a matter of convenience, we may apply to the interest taxed, it would seem to be as much subject to the taxing power as any other intangible interest brought within the control and protection of the State, even though its ultimate economic enjoyment may be dependent wholly on property located and taxed elsewhere. See *Citizens National Bank* v. *Durr, supra; Maguire* v. *Trefry, supra,* 16.

It is unimportant what labels writers on legal theory, the courts of Ohio, or this Court may place upon this interest. The Fourteenth Amendment did not adopt as ultimate verities the quaint distinctions taken three centuries ago by Sir Edward Coke between things that savour of the realty and other forms of right, and between corporeal and incorporeal rights. In applying the Fourteenth Amendment we may recognize, what he failed to realize, that all rights are incorporeal, and that whether they are rightly subjected to state taxing power must be determined by recourse to the principles upon which taxes have universally been laid and collected, rather than by the choice of a label which, by definition previously agreed upon, will infallibly mark the interest as non-taxable.

In every practical aspect—and taxation is a practical matter—the trust certificate holder stands in the same relationship to the land as the stockholder of a land-owning corporation. It is not denied that the petitioner receives as much benefit and protection from the State. of Ohio with respect to his certificates as does the owner of corporate stock, or that his interest is as much within the reach of the state power. Only by resort to subtle refinements of legal doctrine, devised without reference to the problems of taxation and irrelevant to them, or by treating the Fourteenth Amendment as an instrument for giving effect to our own peculiar convictions of what is morally or economically desirable, is it possible to sustain the taxation of the one and not the other.

Even though the tax be destroyed so far as it is imposed on petitioner's interest in the trusts of lands outside of Ohio, it cannot, for any reason advanced to support that conclusion, be deemed invalid as applied to appellant's interest in the Ohio trusts. The opinion of the Court suggests no other reason.

Whatever name we may give to the interest taxed, Ohio is not without jurisdiction of the land, the trustee, the certificates, or the owners of them. All are within the state. The objection to double taxation by a single sovereign is no more potent under the Fourteenth Amendment than the objection that a tax otherwise valid has been doubled. See *Carley & Hamilton* v. *Snook,* 281 U. S. 66, 72; *Magnano Co.* v. *Hamilton,* 292 U. S. 40. The imposition of a tax on a particular interest in land already taxed *ad valorem* does not infringe any constitutional immunity. *Swiss Oil Corp.* v. *Shanks,* 273 U. S. 407, 413 and cases cited.

The fact that the certificates are taxed, and the owners of interests in trusts of land not represented by certificates are untaxed, plainly involves no forbidden discrimi-

nation. The owners of transferable certificates, representing an equitable interest in a trust of land divided into shares, enjoy privileges and advantages not attaching to other forms of ownership, which are an adequate basis for a difference in taxation. See *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 121; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237; *Home Insurance Co.* v. *New York,* 134 U. S. 594, 606; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 572; *State Board of Tax Comm'rs* v. *Jackson,* 283 U. S. 527, 537.

The judgment now given cannot rest on the Delphic concession of counsel, that the State has "no power to tax land or interests in land situate beyond its borders," and that, if situate within the State, there is no power to tax them "in any other manner than by uniform rule according to value." The concession, so far as it relates to the Ohio trusts, plainly has reference to requirements of the state and not the Federal Constitution. For the Fourteenth Amendment does not restrict a state to the taxation of all interests in land uniformly according to value.

We are not concerned with the validity of the tax under the state constitution. The state court has plenary power to settle that question for the litigants and for us, *Withers* v. *Buckley,* 20 How. 84, 89; *Pennsylvania College Cases,* 13 Wall. 190, 212; *Walker* v. *Sauvinet,* 92 U. S. 90; *Southwestern Oil Co.* v. *Texas, supra,* 119, as it has done by sustaining the tax. No concession of counsel about his theory of the law requires us to adopt his theory, however mistaken and irrelevant, for decision of the federal question which is alone before us. None can confer on us jurisdiction to review on appeal the decision of a state question by the highest court of the State, or excuse the abuse of power involved in our reversing its judgment on state grounds.

The objections to the tax affecting the Ohio trusts present no substantial federal question, or any which the

Court has deemed it necessary to consider. The tax affecting the extra-state trusts should be sustained as not infringing any constitutional guarantee.

MR. JUSTICE BRANDEIS and MR. JUSTICE CARDOZO join in this opinion.