## COMMISSIONER OF INTERNAL REVENUE v. H. F. NEIGHBORS REALTY CO.
### No. 6827.

Circuit Court of Appeals, Sixth Circuit.
Jan. 14, 1936.

W. F. Wattles, of Washington, D. C. (Frank J. Wideman, Sewall Key, and J. P. Jackson, all of Washington, D. C., on the brief), for petitioner.

Louis Titus, of Washington, D. C., for respondent.

Paxton & Seasongood, of Cincinnati, Ohio, amici curiæ.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The review is sought by the Commissioner of Internal Revenue of an order of the Board of Tax Appeals and puts in issue the essential nature of a transaction by which the taxpayer raised money upon certain real estate in Cleveland, Ohio; the transaction resulting in the issue and sale of what are known as land trust certificates. If the transaction was a sale of real estate, as the Commissioner claims, the amount realized being in excess of the depreciated cost of the property, it resulted in taxable gain. The taxpayer, however, asserts that regardless of form, the transaction was in substance a borrowing of money on real estate security, and no gain was realized. The deficiencies asserted but not determined by the Board were for the tax years 1925 and 1926.

No factual controversy appears. The respondent is an Ohio corporation, with H. F. Neighbors as president since its organization in 1916. Due to the fact that early in 1925 substantial amounts of bonds upon the taxpayer's property were about to mature, and the fact that there were bank loans and other obligations which had to be met, Neighbors applied to the Cleveland Trust Company for a loan to provide the necessary funds. The Trust Company was ready to lend, but at an interest rate of 6 per cent., with provision for substantial amortization. Neighbors then interviewed another financial house willing to make the loan at 5½ per cent. interest, but also with substantial amortization. He later consulted an attorney, who told him of a new loan system, a land trust certificate plan, which

would enable the taxpayer to borrow money without amortization except at its option. Discussion with Otis & Co., brokers, and with the Guardian Trust Company of Cleveland, led to the adoption of a financing plan, carried out as hereinafter described.

The taxpayer deeded to the Guardian Trust Company, as trustee, six parcels of real estate, having an appraised value of $2,000,000, and returning a net rental of approximately $91,000 per year over taxes and insurance under leases to responsible tenants. The Trust Company contemporaneously executed a lease upon the property to the taxpayer for ninety-nine years, renewable forever, issued one thousand separate land trust certificates, each representing $\frac{1}{1000}$ undivided interest in the real estate covered by the trust deed, and delivered the certificates to the taxpayer. Contemporaneously, also, the Trust Company executed a declaration of trust, reciting that it held the title to the real estate in trust for the owners of the land certificates, and that the holder of each certificate was entitled to receive $55 per year as income upon the certificate. The taxpayer then, in pursuance of a previous arrangement, sold the certificates to Otis & Co. for $955,000, who in turn sold them to the public. After payment of legal and other expenses, the respondent received the net sum of $936,104.11. With the money so received it paid off existing mortgages, and entered the balance upon its books as a loan.

The lease from the Guardian Trust Company to the taxpayer provided for a fixed rental of $55,000 per year, equivalent to 5½ per cent. interest upon the total certificate issue. This rental might never be increased, but was subject to being reduced by the exercise of an option contained in the lease permitting the purchase of all certificates after the expiration of ten years from date of issue at the rate of $1,000 for each certificate and an additional sum ranging from $50 to $25 depending upon the time the certificate was purchased. Upon the purchase of certificates, the rental of the property was to be reduced $55 per year for each certificate purchased. After ten years the taxpayer also had the option of purchasing each of the six parcels of real estate for prices scheduled in the lease. In the event of the purchase of a portion of the leased premises under this op-

tion, the trustee was required to use the purchase price to buy in certificates. The taxpayer also had an additional option to purchase the premises at the redemption price of all outstanding certificates, and if at any time certificates were purchased not only was the rental to be reduced by the sum of $55 annually for each certificate, but the option price of the whole property was likewise reduced by the redemption value of the purchased certificates. After the purchase of a certificate by the taxpayer, the certificate could receive no further distribution of funds. The lease also provided for foreclosure of the taxpayer's interest in the event of default, and for a receiver to take possession of and operate the property.

In addition to the six parcels of real estate covered by the trust deed, declaration of trust, and lease, the taxpayer at the time owned still another parcel of property of the value of $250,000. The lease recited that the ownership of this property, and other financial resources of the taxpayer, had been a substantial inducement to the trustee to accept the trust, and obligated the taxpayer not to sell such property for less than $250,000, with the proviso that if it did sell, the entire proceeds of sale must be reinvested in Cleveland real estate, or in the land trust certificates issued by the trustee, which provision should not apply when the taxpayer had expended not less than $250,000, either in the purchase of land trust certificates or in permanent improvements upon the parcels covered by the lease.

The Commissioner asserted the deficiencies here reviewed on the ground that while the transfer by the taxpayer of its property to the trustee was a nontaxable transaction, being a mere transfer of property to a trustee, with the taxpayer continuing as the equitable owner of the property subject to the trust, nevertheless the subsequent sale of the land trust certificates was a taxable transaction, the basis for determining gain being the depreciated cost of the property. This view was rejected by the Board of Tax Appeals, which concluded from all the facts and circumstances that the parties did not intend to effect a sale of property but a mortgage thereon, and that the taxpayer was not taxable in either year upon any portion of the amount it had received.

 Insofar as the decision of the Board is based upon a finding of fact as to what was the original intention of the parties, its decision may not be here questioned. Insofar as the decision involves the application of legal principles to the facts found, we are in accord with its conclusions. It has long been established doctrine that a court of equity will treat a deed absolute in form as a mortgage when it is executed as security for a loan. In such case the court looks beyond the terms of the instrument to the real transaction, and when that is shown to be one of security and not of sale, it will give effect to the actual contract of the parties. Peugh v. Davis, 96 U.S. 332, 24 L.Ed. 775. While the doctrine that a court will look through form to substance to ascertain the essential nature of a transaction undoubtedly had its origin in equity, it is not confined to equitable causes. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520. As was said by this court in Board v. Commissioner of Internal Revenue, 51 F.(2d) 73, 75, "Tax laws should be applied, as equitable principles are applied, with regard to substance rather than to form." Nor was the Board confined in its consideration of the nature of the transaction to an inspection alone of the written instruments by which it was consummated. Russell v. Southard et al., 12 How. 139, 13 L.Ed. 927. Extraneous evidence was admissible to inform it of the material facts bearing upon it.

The more common criteria which indicate a borrowing and lending rather than purchase and sale, are inadequacy of consideration, provisions for redemption or reconveyance, continued possession and management of the property by the transferer, payment by him of taxes and assessments, and his receipt and use of the rents and profits of the property. These are all present in the transaction here involved to support the Board's conclusions. It is, however, urged that the absence of any promise to repay, the lack of express personal obligation, and definite maturity dates, point to the transaction as a sale. The absence of such indicia has never been considered, however, a bar to the holding of a conveyance though absolute in form, security for a loan. While the existence or non-existence of a debt has sometimes been pointed to as one of the factors determining the nature of a transaction, it is not conclusive. But even if so, we think the lease not wholly lacking in provisions indicating the existence of an obligation, however wanting in definiteness they may be. The taxpayer obligated itself to maintain its financial position to reasonably insure the redemption of certificates. It undertook not to sell its remaining property for less than $250,000, and agreed that if it did sell for that sum or more to reinvest the proceeds in property of equal value, or pay the money to the trustee for the redemption of certificates. While there is lacking that certainty to the taxpayer's obligation to support an action to compel redemption, yet it seems clear enough that some obligation on its part existed when the point to be determined is whether the transaction was a loan or a sale. Debts which never become due are not unknown in the financing of governments and large private corporations. It may well be in this case that the trustee and certificate holders were satisfied with a permanent investment at a substantial interest rate, and sufficiently assured of the ultimate return of principal by the expectation that sound business judgment must compel redemption of property worth $2,000,000 from a funded debt of half that sum, or a refunding of obligations when interest rates should substantially fall.

Finally it is urged on behalf of the Commissioner that even though doubt may have existed as to the transaction being a sale, that doubt is now dispelled by the decision of the Supreme Court in Senior v. Braden, 295 U.S. 422, 55 S.Ct. 800, 79 L.Ed. 1520. That case presented the question as to whether land trust certificates of the kind here involved represent equitable interests in land, or are mere choses in action and so taxable under sections 5388 and 5389, Ohio General Code, providing for taxes upon intangible property. The Supreme Court held the trust certificates there in issue to represent interests in land, and so not taxable under the Ohio Code, whether the certificates represent land outside of Ohio or within Ohio. The taxpayer responds with the contention that Senior v. Braden must be factually distinguished in that there was there no evidence as to the circumstances under which the leases and dec-

176

larations of trust were made, or as to the motives of the several owners in conveying their properties to trustees and receiving back leases with privilege of purchase. To this circumstance it may be added that the trustee there undertook to hold and manage the property for the use and benefit of the certificate owners, to collect and distribute among them the rent, and in case of sale to make pro rata distribution of the proceeds.

We are not, however, required to determine whether Senior v. Braden is to be distinguished in the facts relied upon from the instant case, for in our judgment the decision does not reach the present issue. Neither are we required for purpose of decision to hold with the Board that the deed, declaration of trust, and lease together constituted a mortgage. We confine ourselves to the necessities of the present controversy. It does not follow from the fact that the title which passes to the trustee for the benefit of certificate holders is an equitable or even a legal title, and so determinative of the validity of the Ohio tax, that the transaction which resulted in the passing of title was in effect a sale realizing taxable gain instead of a loan. The character of the estate which passed to the lender is one thing. The character of the transaction as the result of which the estate was created is quite another, and is determined by quite different criteria. At the common law, until modified by equity and legislation in the interest of the debtor and to save estates from forfeiture, a mortgage was regarded as passing the whole legal title to the estate pledged to the mortgagee, who became the owner of it, entitled to its possession and to maintain ejectment against the mortgagor. Upon payment it was necessary to reconvey the property to the debtor in order to re-vest in him the title, but upon default the title became absolute and indefeasible. There was nothing repugnant in a common-law mortgage to the existence of the relationship of borrower and lender between mortgagor and the mortgagee. We see nothing in the Senior v. Braden holding inconsistent with the existence of a relationship of borrower and lender between the taxpayer and the certificate holders or their trustee, or that compels a holding that the taxpayer's financing plan resulted in a sale rather than a loan, even when applying the doctrine there announced in

the full import claimed for it by the Commissioner to the estate held by the trustee or the certificate holders in the present case.

█ A collateral issue is involved with respect to depreciation taken by the taxpayer upon the buildings located upon the leased property, on the theory that the taxpayer still had the beneficial interest in the property, and on the theory that the investment in the buildings was of its capital as owner. The Board allowed the depreciation. We think it was right, and that the case of Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720, does not here apply. See, also, Cogar v. Commissioner of Internal Revenue (C.C.A.6) 44 F.(2d) 554.

The decision of the Board of Tax Appeals is affirmed.