**SCHAFFNER v. HARRISON, Collector of Internal Revenue.**

No. 7139.

Circuit Court of Appeals, Seventh Circuit.

June 18, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Leon F. Cooper, Sp. Assts. to the Atty. Gen., and William J. Campbell, U. S. Atty., of Chicago, Ill., for appellant.

Carl Meyer, Herbert Friedlich, and Louis A. Kohn, all of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment entered in the District Court for the recovery of alleged overpayment of income taxes for the year 1930, in the sum of $19,730.68, and for 1931, $11,685.39 and interest, paid to defendant, Collector of Internal Revenue, by plaintiff, the taxpayer. Judgment was entered upon the pleadings, it appearing that there was no controversy as to the correctness of facts therein averred.

Joseph Schaffner, a resident of Chicago, died testate, June 20, 1918. By the Sixteenth section of his will, duly admitted to probate, he created a residuary trust, designating his wife, the taxpayer, beneficiary of all the income therefrom dur-

ing her life-time, and directing it to be paid to her currently.

On December 23, 1929, the taxpayer executed irrevocable assignments of $84,000 of the net income of the trust for the year 1930, to three children, and on November 14, 1930, similar assignments of $54,000 of the net income for the year 1931, except that the latter assignments were made in part to the surviving husband of one of her daughters, who had, in the interim, died. Each of the instruments transferred "such portion of the income as shall equal the sum of $......... from and out of the net income that may be derived during the year 1930 from the trust estate created by the Sixteenth section of the last will and testament of Joseph Schaffner." Each recited that the assignee should be entitled to receive and collect the sum assigned and that the trustees were directed to pay it to the transferee in installments during the year. It was further provided that the trustees might pay the sum "out of whatever specific income derived as aforesaid from said trust estate during the year they may elect or appropriate for that purpose," and their selection and allocation were made conclusive upon the assignees. The transfers were made "absolute and irrevocable" and "wholly free from my (the assignor's) individual control and direction." The moneys to be paid to each assignee were, by the instruments, to be "deemed income in her hands and she shall be regarded as substituted pro tanto as beneficiary for the year (to the extent of the sum assigned) in my place." The sums assigned were paid by the trustees to the assignees. The taxpayer did not account for any of the same in her tax returns. The commissioner held the assigned amounts taxable income of the taxpayer and assessed against her deficiency taxes for the years 1930 and 1931, which were paid and for return of which judgment was entered in this suit.

The District Court relied upon Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. There the taxpayer, who was beneficiary for life of a testamentary trust, assigned to his daughter an interest amounting to $6,000 for the remainder of the calendar year and to $9,000 in each year thereafter out of the income to which he was entitled during his life under the trust. He made like assignments to another daughter and a son, and in later years, by similar instruments, he assigned to his children additional interests and to another son, another specified interest in the net income. The court held the assignments valid and assignees taxable upon the income, not the assignor.

The Government there relied upon Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665. The court distinguished these from the facts of the Blair case, saying that Lucas v. Earl was decided upon the taxing act and holding that where an attorney had assigned his earned income to his wife, the tax should be assessed against him upon his earnings. The Burnet case had to do with the assignment of an interest in a partnership income earned by the partner. This, the court held, under the statute, resulted in earnings of a partner taxable to him.

The court, after discussing the pertinent statutory provisions, said [300 U.S. 5, 57 S.Ct. 333, 81 L.Ed. 465]: "These provisions cannot be taken to preclude valid assignments of the beneficial interest, or to affect the duty of the trustee to distribute income to the owner of the beneficial interest, whether he was such initially or becomes such by valid assignment. The one who is to receive the income as the owner of the beneficial interest is to pay the tax. If under the law governing the trust the beneficial interest is assignable, and if it has been assigned without reservation, the assignee thus becomes the beneficiary and is entitled to rights and remedies accordingly. * * * The will creating the trust entitled the petitioner during his life to the net income of the property held in trust. He thus became the owner of an equitable interest in the corpus of the property. Brown v. Fletcher, 235 U.S. 589, 598, 599, 35 S.Ct. 154, 157, 59 L.Ed. 374; Irwin v. Gavit, 268 U.S. 161, 167, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897; Senior v. Braden, 295 U.S. 422, 432, 433, 55 S.Ct. 800, 803, 79 L.Ed. 1520, 100 A.L.R. 794; Merchants' Loan & Trust Co. v. Patterson, 308 Ill. 519, 530, 139 N.E. 912. By virtue of that interest he was entitled to enforce the trust, to have a breach of trust enjoined and to obtain redress in case of breach. The interest was present property alienable like any other, in the absence of a valid restraint upon alienation. Commissioner v. Field (C.C.A.) 42 F.2d 820, 822; Shanley v.

Bowers (C.C.A.) 81 F.2d 13, 15. The beneficiary may thus transfer a part of his interest as well as the whole. See Restatement of the Law of Trusts, §§ 130, 132 et seq. The assignment of the beneficial interest is not the assignment of a chose in action but of the 'right, title, and estate in and to property.'"

There as here the Government argued that, under the Revenue Act of 1928, § 162, 26 U.S.C.A.Int.Rev.Acts p. 405, the assignment covered only the right to receive income and did not amount to an assignment of any equitable right, title or interest in the trust estate itself. The court said in respect to this: "This construction seems to us to be a strained one. We think it apparent that the conveyancer was not seeking to limit the assignment so as to make it anything less than ·a complete transfer of the specified interest of the petitioner as the life beneficiary of the trust, but that with ample caution he was using words to effect such a transfer."

The only difference between the Blair case and the one presented to us is that in the former, the assignment was of a portion of the income for the remainder of the life estate of the assignor, while in the latter a part of the trust income in a specified year only was assigned. In each case, however, the assignment was of merely a portion of the trust income. Such assignment, in the language of the Supreme Court, made the assignee "the owner of an equitable interest in the corpus of the property," entitled to enforce the trust. The interest transferred was "present property alienable like any other." If an irrevocable assignment of a part of the income from an irrevocable existing trust for an uncertain period such as the life of the assignor transfers a property interest in the corpus, we see no reason why the assignment of a certain specified portion of such income for a specific period, one or two years, does not work the same result. If one is an interest in the corpus so likewise must be the other. The one may exist for thirty days or twenty years. The other will exist definitely for a year. Any difference is one of quantum, not of quality. There is no legal difference in the subject matter of what is assigned in the two instances. In each the assigned portion is part and parcel of the whole, and, under the language

of the Supreme Court, an alienable equitable property interest.

The Government relies upon the recent case of Helvering v. Clifford, 60 S.Ct. 554, 556, 84 L.Ed. 788, February 26, 1940. There the complaining taxpayer declared himself a trustee of certain securities which he himself owned. He provided that he should hold the securities for five years for the benefit of his wife. Upon termination of that period, the corpus of the estate was to revert to the respondent himself and only undistributed net income was to be the property of his wife. During the continuation of the trust, the respondent was to pay to his wife such of the net income as "he in his absolute discretion" might determine. He retained full power to exercise all voting powers upon shares of stock, to sell, exchange, mortgage or pledge any of the securities, either principal or income, to invest and reinvest without restriction, to collect all income and to compromise claims held by him as trustee. One clause expressly protected him from all losses except those occasioned by his "own wilful and deliberate" breach of duty. Neither principal nor income was liable for the debts of the wife. The wife could not transfer, encumber, assign or anticipate any interest in the trust or income therefrom prior to actual payment to her.

In this situation, the Board of Tax Appeals concluded that respondent continued to be the .owner for taxing purposes under section 22(a) of the statute, 26 U.S.C.A.Int.Rev.Acts, p. 354, and levied a tax against him.

In the Supreme Court, Mr. Justice Douglas, speaking for the majority, said: "In this case we cannot conclude as a matter of law that respondent ceased to be the owner of the corpus after the trust was created. Rather, the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of § 22 (a) [Revenue Act 1934, 26 U.S.C.A.Int.Rev.Acts, p. 669]."

Thus the court concluded that upon the facts as found by the Board, it could not say as a matter of law that the ultimate finding was erroneous. The issue, it said, whether the grantor of a trust may still be treated under the statutory scheme as

owner of the corpus, must depend upon the specific facts and circumstances.

The court found decisive the control retained by the grantor. He had created the trust estate out of his own property. He retained title to the assets, absolute dominion over the same and absolute discretion in management thereof. Said Mr. Justice Douglas: "So far as his dominion and control were concerned it seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before. The wide powers which he retained included for all practical purposes most of the control which he as an individual would have. * * * It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. * * * Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22(a). * * * The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the 'victim of despotic power when for the purpose of taxation he is treated as owner altogether.' See Dupont v. Commissioner, 289 U.S. 685, 689, 53 S.Ct. 766, 767, 77 L.Ed. 1447."

Thus the full extent of the decision, apparently, is that in view of the grantor's retained control, the court felt that it was not justified in concluding that the triers of the facts committed reversible error when they found that the husband was the owner of the corpus for the purpose of taxation.

The distinction between the Blair and the Clifford cases seems to us, obvious, and the same distinction between the case at bar and the Clifford case, evident. In the Blair case and in the present one, the assignor was the owner of an equitable interest, a part of which he assigned irrevocably, thus passing the property interest to the assignee, the assignor retaining no control or authority over what was assigned. In the Clifford case the all decisive element was the fact that the grantor creating the trust retained control over its corpus, management thereof, absolute discretion in supervising and operating it, and, at the end of five years, again became the absolute owner of the corpus. Here the trier of facts found that control was not retained by the assignor. In the Clifford case the trier of facts found the contrary. The Supreme Court did not feel justified in disturbing the findings in that case. There is no more reason why, with substantial evidence supporting the conclusions of the trier of facts in this case, we should interfere.

The judgment of the District Court is affirmed.