### TITLE INSURANCE & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8886.

Circuit Court of Appeals, Ninth Circuit.

Dec. 27, 1938.

John T. Riley and Marshall D. Hall, both of Los Angeles, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, Morton K. Rothschild, and S. Dee Hanson, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Petitioner, Title Insurance & Trust Company, as trustee of the Taft Building Land Trust (also called Trust No. B–7620), seeks reversal of a decision of the Board of Tax Appeals which determined that there was a deficiency of $2,726.36 in respect of the income tax payable by petitioner as such trustee for the calendar year 1933.

On the income received by it as such trustee in 1933, petitioner, relying on § 161(a) of the Revenue Act of 1932, 47 Stat. 219, 26 U.S.C.A. § 161(a),[1] paid only such tax as would have been payable by an individual receiving such income. Respondent, the Commissioner of Internal Revenue, determined that the Taft Building Land Trust was an association, within the meaning of § 1111(a) (2) of the Revenue Act of 1932, 47 Stat. 289, 26 U.S.C.A. § 1696 (3),[2] and that, consequently, its income was taxable as that of a corporation. The Board upheld respondent's determination.

The Board's findings of fact are not challenged. Facts found were as follows:

The Taft Building Land Trust was created by a trust agreement dated June 15, 1927, between Mitchum, Tully & Company, a corporation, as trustor, petitioner as trustee, and Harry L. Dunn, Albert Parker and "such persons, partnerships, associations and/or corporations as may become parties hereto by the acceptance of certificates issued hereunder," as beneficiaries.

The agreement recites that the trustor has conveyed to the trustee certain described real property in Los Angeles, California, and provides that the trustee shall hold this property in trust for the beneficiaries; that the entire beneficial interest in the trust shall consist of 665 equal parts, called fractional interests, represented by certificates to be issued by the trustee; that the fractional interest represented by any such certificate shall be transferable on the books of the trustee, upon surrender of the certificate, properly endorsed; that the trustee shall keep a register of the names of certificate holders, proper transfer books and books of account showing receipts and disbursements of the trust estate; that no certificate holder shall have, as such, any estate or interest in the trust property, but

---

1 Section 161(a) provides: "The taxes imposed by this title [Title I—Income Tax] [chapter] upon individuals shall apply to the income of estates or of any kind of property held in trust * * *."

2 Section 1111(a)(2) provides that, when used in the Act, "The term 'corporation' includes associations, joint-stock companies, and insurance companies."

may enforce performance of the trust; that no transfer by operation of law of the interest of any certificate holder shall operate to terminate the trust or entitle the successors of such holder to an accounting or to take any action in the courts or otherwise against the trustee or the trust estate; that in the event of death of any certificate holder, the person or persons entitled by law shall succeed to the rights of such holder; and that no assessment shall ever be made upon the holder of any certificate.

The agreement further provides that the trustee may lease the trust property, or any part thereof, to Sun Realty Company, a corporation, for a period of 98½ years commencing July 15, 1927, for a yearly rental of $42,000, with an option to purchase the property for $725,000 prior to June 15, 1952, or for $750,000 within such time as may be specified in the lease, which may contain such further terms, provisions and conditions as the trustee may approve; that if Sun Realty Company or any other lessee of the property shall default, the trustee may terminate the lease; that if the lease shall be terminated or shall expire, the trustee may take such steps as in its opinion may be necessary and proper for the best interest of certificate holders with respect to leasing, operating, selling, conveying or otherwise disposing of the trust property; and that the trustee may enforce any lease made by it and may, in its discretion, modify or supplement any such lease, provided no such modification shall decrease the amount of rental or the option price specified in the lease to Sun Realty Company.

The agreement further provides that the trustee shall, semi-annually, distribute rentals and income, less its fee and expenses, pro rata, to registered certificate holders, not exceeding, however, $30 for each fractional interest, the remaining rentals and income to be applied to the redemption of certificates; that as and when moneys in excess of semi-annual distributions and expenses become available, the trustee shall invite offers of certificates for redemption and shall accept the lowest available offer or offers, but that the redemption payment in respect of any one interest shall not be more than $1,050 on or before June 15, 1937, nor more than $1,030 thereafter and on or before June 15, 1947, nor more than $1,010 thereafter and on or before June 15, 1957, and thereafter not more than $1,000, together with accrued

semi-annual distributions to date of redemption; that certificates so redeemed shall be endorsed "Redemption Payment Made;" and that holders thereof shall receive no further payments or distributions until all certificates have been redeemed, after which time all certificate holders shall share pro rata in all funds available for distribution.

The agreement further provides that, if Sun Realty Company shall exercise its option to purchase, the trustee may, upon receipt of the purchase price, execute the necessary conveyance without securing the consent of certificate holders; that the trustee may, subject to the option of Sun Realty Company, sell and convey all of the trust property, without the consent of the certificate holders, provided the sale shall make available for distribution among the beneficiaries at least $1,250,000; and that upon receipt of written consents of the holders of two-thirds of the 665 interests, including two-thirds of those represented by unredeemed certificates, the trustee may at any time, but shall not be obligated to, sell and convey the trust property upon such terms as may be specified in such consents.

The agreement further provides that the trustee may, in its discretion, seek the advice of the certificate holders, and, if notified in writing by holders of a majority of the 665 beneficial interests, including a majority of those represented by unredeemed certificates, of their agreement upon a course which they desire to be taken, not inconsistent with any express provision of the agreement, may endeavor to effectuate the same, but shall not be obligated to do so; that, except as otherwise provided, the trustee shall have the exclusive management and control of the trust estate; that it may compromise and settle claims made by or against it or the trust estate; that it shall be indemnified from the trust estate for any personal liability incurred by it in the administration of the trust, except such as may arise from its personal and wilful default; that it may mortgage the trust property for the purpose of providing funds to meet any exigency arising in connection therewith and for the benefit of certificate holders; that it may borrow money, give notes or other security therefor, and apply such moneys as may, from time to time, be available to the payment of such borrowings, in preference to the claims of beneficiaries in re-

spect of their fractional interests; and that neither the trustee nor any certificate holder shall be personally liable upon any contract or obligation made or entered into by the trustee in connection with the trust estate.

The agreement further provides that the trustee may resign upon giving four weeks' written notice to the certificate holders, who may select its successor; that, in the event of their failure or neglect so to do, the trustee may request a judge of the District Court of the United States for the Southern District of California to designate a successor trustee; and that, unless sooner terminated as provided in the agreement, the trust shall terminate upon the death of the last to die of numerous persons named in the agreement.

The trustor, Mitchum, Tully & Company, was, at all pertinent times, engaged in business as an underwriter and investment banker. It had purchased the trust property and had negotiated and arranged for the lease to Sun Realty Company prior to the execution of the trust agreement. Improvements on the property consisted of a 12-story building, having stores on the ground floor and offices above. The trustee executed the Sun Realty Company lease at or about the same time it executed the trust agreement.

The lease is for a term of 98½ years commencing July 15, 1927, at a net monthly rental of $3,500. It requires the lessee to pay all taxes which may be levied against the property or the leasehold, to repair and maintain the building, and to keep it insured against damage by fire and earthquake, and provides that, if the lessee shall be in default in the payment of rentals or otherwise, and if such default shall continue for a period of 30 days, the trustee may, at its option, terminate the lease.

After the execution of the trust agreement, the trustee issued certificates representing the 665 fractional interests to Dunn and Parker, who assigned them to the trustor, which in turn assigned or sold them to others. During 1933 all of the 665 interests were outstanding, and unredeemed certificates were held by 222 persons. Of the 665 interests outstanding, 17 had been redeemed, as provided in the trust agreement, by the end of 1933, but the 17 interests were not thereby extinguished. The holders thereof merely relinquished their right to receive any further distributions until all interests had been similarly redeemed.

In the course of a year, the activities of the trustee consisted of collecting monthly rentals and depositing the same, making two distributions to certificate holders, paying income taxes and its own fees, making proper entries in its books of account, and the performance of ordinary duties of any real estate trust, such as ascertaining whether proper insurance was carried by the lessee. No meetings were held by the trustee or beneficiaries of the trust in connection with the management of its affairs. The rentals provided for in the Sun Realty Company lease were always paid. The lessee was once in default, but such default continued for less than 30 days.

Whether these facts warrant the conclusion that the Taft Building Land Trust was an association, within the meaning of § 1111(a) (2) of the Revenue Act of 1932, 26 U.S.C.A. § 1696(3), is the question now to be decided.

Section 1111(a) (2) of the Revenue Act of 1932 is identical with § 2(2) of the Revenue Act of 1921, 26 U.S.C.A. § 1696 (3), § 2(a) (2) of the Revenue Acts of 1924 and 1926, 26 U.S.C.A. § 1696(3), § 701(a) (2) of the Revenue Act of 1928, 26 U.S.C.A. § 1696(3), and § 801(a) (2) of the Revenue Act of 1934, 26 U.S.C.A. § 1696(3).[3] None of these acts defines the term "association," but regulations in reference thereto have been promulgated by the Treasury Department.[4] Concerning these regulations, the Supreme Court said in Morrissey v. Commissioner, 296 U.S. 344, 356, 56 S.Ct. 289, 294, 80 L.Ed. 263: " * * * The difficulty with the regula-

---

[3] 42 Stat. 227; 43 Stat. 253; 44 Stat. 9; 45 Stat. 878; 47 Stat. 289; 48 Stat. 771.

[4] Regulations 62, 65 and 69, Arts. 1502–1504; Regulations 74 and 77, Arts. 1312, 1314; Regulations 86, Arts. 801-1 to 801-3. Regulations 77, promulgated under the Act of 1932, provide as follows:

"Art. 1312. *Association.*—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital

tions as an exposition was that they themselves required explication; that they left many questions open with respect both to their application to particular enterprises and to their validity as applied. * * * While it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create, the recurring disputes emphasize the need of a further examination of the congressional intent."

▮ Thereupon (pages 356–360, 56 S.Ct. 289), the Court made such examination and stated the principles to be applied in determining whether a trust is or is not an association, within the meaning of the Revenue Acts. Applying these principles, the Court held in the Morrissey Case and in Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273, Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L. Ed. 275, and Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, decided the same day, that each of the trusts there involved was an association. Applying the same principles, we reach a similar conclusion in this case.

The trust here involved had all the "salient features" which, in the Morrissey Case, page 359, 56 S.Ct. 289, were held to constitute a trust an association. It was created and maintained as a medium for carrying on a business enterprise and sharing its gains; title to the property embarked in the enterprise was held by a trustee, as a continuing entity, during the existence of the trust; there was centralized management by the trustee as representative of the beneficiaries; the enterprise was secured from termination or interruption by the death of beneficiaries; means were provided for the transfer of beneficial interests and for the introduction of a large number of participants without affecting the continuity of the enterprise; and the personal liability of the participants was limited to the property embarked in the undertaking.

▮ Petitioner's contention that the trust was not created or maintained for the purpose of carrying on a business disregards the admitted facts. As disclosed by the trust agreement, its purpose was to carry on the business of owning, managing, leasing and selling real property and sharing the gains therefrom. The fact that there was only one piece of property is unimportant. Swanson v. Commissioner, supra, pages 363, 365, 56 S.Ct. 283. So, also, is the fact that, in the taxable year (1933), the trustee's activities were confined to the collection and distribution of rents, payment of taxes, bookkeeping and other incidental duties. The purpose of the trust is found in the instrument which created it. The parties are not at liberty to say that it had a different or narrower purpose. Helvering v. Coleman-Gilbert Associates, supra, page 373, 56 S.Ct. 285; Commissioner v. Vandegrift Realty & Investment Co., 9 Cir., 82 F.2d 387, 390.

In Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601, cited by petitioner, the function of the trustees was simply to collect the rents and income of the trust property. In this case, the function of the trustee was not so limited. Here, the trustee was empowered to lease the whole or any part of the trust property and, in 1927, did lease the whole of it to Sun Realty Company. If that lease had not been made, or if for any reason it had been terminated, it would have been incumbent on the trustee to lease the property to another lessee, or other lessees, or to sell it, the power to make such sale, with or without the beneficiaries' consent, having been expressly conferred by the trust agreement. Hence, this was not, as in

---

which each has or has invested in the business or property of the organization. * * *

"Art. 1313. *Association distinguished from partnership.*—an organization, the membership interests in which are transferable and the business of which is conducted by trustees or directors and officers without the active participation of all the members as such, is an association and not a partnership. * * *

"Art. 1314. *Association distinguished from trust.*—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, no association exists. * * * Where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but have similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the Act."

Crocker v. Malley, a mere trust for the receipt and distribution of income, but was, we think, a business trust and properly classifiable as an association.

Decision affirmed.