## CLEVELAND TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8331.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1940.

David A. Gaskill, of Cleveland, Ohio (David A. Gaskill, Earl P. Schneider, and Thompson, Hine & Flory, all of Cleveland, Ohio, on the brief), for petitioner.

M. S. Zimmerman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

HAMILTON, Circuit Judge.

We have here for consideration the question of whether a land trust as a method of financing loans on real estate has the essential characteristics of an association engaged in carrying on a business for profit and falling within the applicable revenue statute in force providing for the taxation of corporations.

The applicable statute is the Revenue Act of 1934, ch. 277, 48 Stat. 680, Sec. 801, 26 U.S.C.A. Internal Revenue Code, § 3797(a) (3). On February 15, 1923, as the result of a merger of the Cleveland Trust Company and the Garfield Savings Bank, the former acquired, by deed, a lot with a twelve-story building in Cleveland, Ohio.

On November 15, 1924, the Cleveland Trust Company executed to the State Bank & Trust Company a ninety-nine year lease, renewable in perpetuity, on the land and improvements, in consideration of the lessee paying to it in cash the appraised value of the improvements and a net annual rental of $30,000. As an integral part of the lease, the lessee was given a ten-year option to purchase the property for $550,000. The Cleveland Trust Company devised a plan, which was executed, of transferring the property to itself as trustee, subject to the lease, and thereupon issued and sold to the public for $1,000 each, 535 land trust certificates. This method was in general use in Cleveland, Ohio, and vicinity in financing real estate loans as a substitute for an outright mortgage.

Under the declaration of trust, the trustee held the premises subject to the lease in trust for the use and benefit of all holders of certificates of equitable ownership, and provided that it would pay quarterly to record holders of the certificates their proportionate shares of rents or other income received by the trustee from the estate after deducting the trustee's compensation and expenses; that the beneficial interests in the trust estate should be divided into 535 shares evidenced by said certificates; that no beneficiary should have legal title to the trust property, nor the right to call for a partition of the trust estate during the life of the trust; that no transfer by operation of law of the interest of a beneficiary during the continuance of the trust should terminate it, nor entitle the legal representative of a deceased beneficiary to an accounting or any action against the trust estate or trustee, but that executors, administrators, or assigns of any deceased beneficiary should succeed to the rights and be subject to the liabilities of the decedent; that notwithstanding any legal transfer of any interest of a beneficiary, the trustee should be protected in his payment of distributions of the trust to the personal representative of any deceased beneficiary and that such transfer should be enforceable against such personal representative and not against the trustee or

trust estate; provided for the annual compensation of the trustee to be deducted from rents collected by it and for the incurring of expenses incidental to printing of the trust instrument, certificates of ownership and books and records in connection therewith.

The instrument also provided that the trustee warranted neither the title to the premises nor validity of the lease, nor guaranteed its performance; that the trustee undertook to exercise only ordinary care in collecting and distributing rentals and proceeds of a sale, if any; that it should have the exclusive right to manage and control the estate as it deemed best, free from control by the beneficiaries as though it were the sole legal and equitable owner, and should not be subject to any obligations to the beneficiaries other than those especially assumed in the trust instrument; that it could make agreements, modifying, amending or supplementing the lease at its discretion and settle claims either in contract or tort against it; that it should be indemnified from the trust estate for any personal liability incurred in the administration of the trust except that which arose from personal and willful default, and from liability for any good faith acts of commission or omission in the execution of the trust, nor should it be personally liable for those of its officers or employees.

The trustee was authorized to borrow funds to meet temporary exigencies in connection with the trust management but could not bind itself or the beneficiaries personally. In the event of default by the lessee and the termination of the lease became necessary or advisable in the opinion of the trustee, notice was to be given the registered holders of the certificates who had the right to advise the trustee as to the disposition of the property or, in the absence of the expression of the wishes of a majority in interest of such certificate holders, the trustee should have full authority to sell, lease, manage, operate or dispose of the premises, as it judged to be to the best interests of the said holders. Upon the exercise by the lessee of its option to purchase or upon a sale by the trustee the remainder of the proceeds, after deducting necessary expenses and reasonable compensation to the trustee, was to be divided among the certificate holders. The annual rental of $30,000 was sufficient to yield $5\frac{1}{2}\%$ on $1,000, par value of each certificate and the proceeds of the option, if exercised, were sufficient to distribute to each certificate holder $1,028 for which he

had paid $1,000, and at the time of the sale of certificates, the land for which each certificate owner was awarded a 1/635 beneficial interest was appraised at $550,000 and the building at $445,000.

The lessee merged with the Union Trust Company of Cleveland and about June 15, 1933, commenced liquidation as an insolvent, having theretofore defaulted in the payment of rentals. The petitioner trustee released the lessee of its obligations under the lease in consideration of $75,000 and the assignment of the lease to the Three Twenty-two Euclid, Incorporated, a corporation organized by the petitioner, trustee, all of its stock being held by a nominee of the petitioner for the benefit of the trust. Its directors and corporate officers were employees of the petitioner and the purpose of its organization was the acquiring of the leasehold estate and the preservation of it continuity pending the procurement of a new tenant for the property.

A twenty-year lease with a new tenant was negotiated by the petitioner providing for an annual rental of $35,000, the first ten years, and $40,000 for the remainder. The Three Twenty-two Euclid demolished the old building and erected another one at a cost of approximately $135,000 of which $25,000 was paid by the lessee and the remainder by the lessor, some of the funds being furnished by the petitioner.

The petitioner reported the $75,000 received by it during the year 1934 on a fiduciary income tax return (Revenue Act of 1934, Secs. 161, 162, 163, 26 U.S.C.A. Internal Revenue Code §§ 161, 162, 163) and paid taxes on that undistributed. It reported distribution to the certificate holders for the year of $29,425. The Commissioner determined the petitioner was a taxable association and included the $29,425 in its taxable income, which determination was sustained by the Board; hence this appeal.

Corporations constitute a well-known class of tax-payers. The Revenue Act does not, however, confine the taxable entity merely to the definition of the term "corporation" found in the body of corporate law. It makes a taxable entity as far as that term goes and in addition treats as taxable entities, "associations," "joint-stock companies" and "insurance companies" 26 U.S.C.A. Internal Revenue Code, § 3797(a) (3). The Act also provides for the taxation of trusts and partnerships as separate taxable entities. The line of separation between trusts and associations is often so vague as to make them almost indistinguishable.

▪▪ In this case it becomes necessary carefully to construe the Revenue Act and in so doing, we must translate, if possible, into the most accurate form, the idiomatic meaning of the word "association" as used. It is not to be construed grammatically, but in a business sense. The term "association" does not have in law the fixed meaning accorded to "partnership" or "corporation," but in its business sense is used to indicate a collection of persons who have united or joined together for some business purpose. It may be defined as a body of persons acting together without a charter but using the methods and forms of corporate bodies in the prosecution of some business enterprise for profit. Morrissey et al., Trustees v. Commissioner, 296 U.S. 344, 352, 56 S.Ct. 289, 80 L.Ed. 263.

▪ Business, itself, is a word of large and indefinite import. It is that which occupies the time, attention and labor of men for profit. The word "business" in its present connection connotes a commercial or industrial establishment or enterprise. The distinction between it and "property" must be clearly kept in mind in applying the taxing statute here. Business in the sense in which it is here used means the activity, the energy, the capacity, the opportunities by which results are reached, the doing of the varied commercial acts and taking of the requisite steps from which result conclusions and conditions.

▪ The mere receipt of income from leased property and its distribution to cestuis que trustent amounts to no more than receiving the ordinary fruits that arise from the ownership of property and does not constitute doing business. McCoach v. Minehill Railway Co., 228 U.S. 295, 306, 33 S.Ct. 419, 57 L.Ed. 842.

▪ As we view the facts here, one of the essential attributes of a taxable association growing out of a trust is absent, i. e., that of holding and operating property by a trustee for profit. The trust here in question was not carrying on a business, but was conceived for investment purposes, the advantage being a reduction of tax liability under the laws of Ohio. Senior v. Braden, 295 U.S. 422, 55 S.Ct. 800, 79 L.Ed. 1520, 100 A.L.R. 794; Commissioner v. H. F. Neighbors Realty Company, 6 Cir., 81 F.2d 173; Commissioner v. F. & R. Lazarus & Co., 6 Cir., 101 F.2d 728; Crocker v. Malley, 249

U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949; Morrissey et al. v. Commissioner, supra; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278.

The power of the trustee to receive rents and distribute them to certificate holders did not have the effect of making it an association for profit, nor did the right to possession and disposition of the property to lease or relet it in case of default by the lessee have that effect but was a mere incidental power to be exercised under exceptional circumstances. The trust instrument shows no plan to carry on a business in buying, selling, leasing or dealing in real estate.

Under ordinary trusts, trustees are often empowered to substitute investments or sell property and to lease and rent the corpus of the trust, but to hold such transactions as creating an association for profit would be in effect to subject such trusts to the taxable status of corporations.

In our opinion, under the facts, the present trust is taxable under Sections 161, 162 and 163 of the Revenue Act of 1934.

The order of the Board is reversed.