MAIN-HAMMOND LAND TRUST, THE SOUTHERN OHIO SAVINGS BANK & TRUST CO., TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ORPHEUM THEATRE LAND TRUST, THE SOUTHERN OHIO SAVINGS BANK & TRUST CO., TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27157, 29936.   Promulgated December 6, 1951.

*Leo Weinberger, Esq.,* and *Jerome Frank, Esq.,* for the petitioners.
*Lyman G. Friedman, Esq.,* for the respondent.

### OPINION.

Van Fossan, *Judge:* Respondent has moved to dismiss the petitions in these proceedings, assigning as the reason that both trusts have previously terminated and do not constitute the proper parties to continue therewith. Our jurisdiction having thus been challenged, we first determine that question before proceeding to consider the merits of the issue involved.

On March 3, 1950, respondent issued to Main-Hammond Land Trust the statutory notice of deficiency upon which this action, Docket No. 27157, is based. On March 9, 1950, the Trustee filed its petition with this Court on behalf of the Trust. Subsequently, the holders of Main-Hammond trust certificates requested the Trustee to terminate the trust. The Trustee complied with this request and made distribution to them of their interests in trust assets except for a certain amount retained as indemnity for tax liability or any other liability that might be assessed against it, and for any expenses incurred in connection therewith. Thereafter, by letter dated August 21, 1950, respondent was notified by the Trustee that the trust had been terminated on July 27, 1950, and on that same date a Form 966 was forwarded in which it was stated that the trust estate had been distributed and the trust completely terminated except that the above-mentioned amount had been retained as indemnity.

Respondent raises no question as to the propriety of the petition here involved at the time it was originally filed. Rather, he argues that Main-Hammond was terminated while the action was pending before this Court and that, therefore, it is not the proper party to continue to act for its former certificate holders.

On the other hand, Main-Hammond contends that it was obligated under the trust agreement to pay any income taxes which might be assessed against it; that funds were specifically retained for this purpose; and that as long as any tax liability remained outstanding it did not terminate, any statements to the contrary notwithstanding.

The only authority cited by respondent in support of his position is *Fancy Hill Coal Works*, 2 B. T. A. 142. That case is clearly distinguishable on its facts from the one before us. The trust there involved had been dissolved some five years before the petition was filed. Its termination was uncontroverted. The only issue presented was

whether its last trustee continued as its legal representative to originate and to prosecute an action in its name. Here, however, the petition was filed during the legal existence of Main-Hammond, and respondent raises no question as to the validity thereof.

Whether or not Main-Hammond still remains in existence, is immaterial. Upon the filing of the petition in accordance with the law and our rules of procedure, the petitioner then being in existence, we acquired jurisdiction. *Michael Duggan*, 18 B. T. A. 608; *Southern California Rock & Gravel Co.*, 26 B. T. A. 296. Such jurisdiction remains unimpaired until we here have decided the controversy. *James Duggan*, 21 B. T. A. 740. No curtailment occurs upon the death of a petitioner *pendente lite. Michael Duggan, supra.* Therefore, it is clear that even though we assume the legal death of Main-Hammond prior to the disposition hereof, that fact does not have the effect of ousting us of jurisdiction. Respondent's motion to dismiss, in so far as it applies to Docket No. 27157, is denied.

Respondent's motion to dismiss in Docket No. 29936 presents a different question.

At the earlier request of Orpheum Trust certificate holders, the Trustee, on May 31, 1950, made distribution to them of their respective proportionate interests in the trust assets. A Form 966 was duly filed with the respondent on June 28, 1950. On August 3, 1950, respondent issued his statutory notice of deficiency for the redetermination of which a petition was filed with this Court on August 11, 1950. Thereafter respondent was advised by letter dated August 18, 1950, that the Orpheum Trust had been completely terminated on June 27, 1950.

Similarly, as in the case of Main-Hammond, Orpheum advances the argument that it is obligated under the original trust agreement to pay any income taxes assessed against it; that it retains funds adequate to meet such obligation; that these funds were deposited with it by Cooper prior to any distribution made to the certificate holders; that it did not completely terminate as long as it was faced with an outstanding tax liability despite the fact that all the assets in its hands, other than the deposit by Cooper, had been distributed to its certificate holders; and that, therefore, it is still in existence for the purpose of prosecuting this action, any previous statements by it to the contrary notwithstanding. We do not agree.

There is no evidence that any Orpheum Trust certificates remained outstanding subsequent to June 27, 1950. Nor is there any showing that any part of the trust assets was retained. To the contrary, the record clearly shows, and Orpheum admits, that the funds held by the Trustee after that date were only those deposited with it by Cooper as indemnity against any liability that might be assessed against it.

Moreover, Orpheum admits on brief that one of the considerations for effecting the distribution was the indemnity agreement with Cooper.

Under the laws of most states a corporation remains in existence for a period following its dissolution for the purpose of settling its affairs and retiring any outstanding indebtedness. However, there has been no authority cited, and we know of none, for the proposition that the same is true of a trust following distribution of its assets, simply because one of its former beneficiaries deposits indemnity money with the last trustee as consideration for such distribution. Accordingly, we are of the opinion that Orpheum was completely terminated and, in all respects, legally died on June 1, 1950, leaving no legally recognizable successor.

The burden of proving that this Court has jurisdiction of a proceeding is upon the petitioner. Orpheum has failed to meet its burden.

The instant case is to be distinguished from *James Duggan, supra*, where it was held that the jurisdiction of the Board of Tax Appeals having once attached is not abated by the death of a petitioner before final decision. Here, our jurisdiction has never been effectively invoked. Wherefore, the petition in Docket No. 29936 is dismissed.

Having thus disposed of respondent's motions to dismiss, we turn now to consider the merits of the issue presented in Docket No. 27157. The sole question involved is whether, during the taxable year, Main-Hammond was an association within the purview of section 3797 (a) (3) of the Internal Revenue Code,[1] and, therefore, taxable as a corporation, or whether it was a pure trust concerned only with the conservation of trust property and the distribution of income therefrom to its beneficiaries. The parties being in substantial agreement as to the facts, the question posed is entirely one of interpretation.

The term "association" is not precisely defined anywhere in the Code. But the courts have had many occasions to construe its meaning and have set forth the elements of an association organized in the form of a trust in numerous decisions. These decisions have laid down the rule that to be classified as an association a trust must bear substantial similarity in form and powers to a corporation and must be employed in carrying on a business for the profit of its beneficiaries. Thus the instrument creating such trust must be carefully scrutinized.

No useful purpose would be served by our elaborating in detail upon the *quasi* corporate powers and possible functions of Main-Hammond as set forth in the declaration of trust. Suffice it to say that

---

[1] SEC. 3797. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

    \*       \*       \*       \*       \*       \*       \*

(3) CORPORATION.—The term "corporation" includes associations, joint-stock companies, and insurance companies.

that instrument provided for the transferability of trust certificates, the continuity of the trust undisturbed by the death of a certificate holder, the centralization of control and management, and the limitation of liability to the trust assets. Such provisions are salient features of a corporate organization. *Morrissey* v. *Commissioner*, 296 U. S. 34±. In addition, it must appear that the trust was organized for a business purpose and could or did operate as such.

Main-Hammond takes the position that it was a pure trust created and utilized as a method of financing a loan on real estate. In support thereof it cites *Cleveland Trust Co.* v. *Commissioner* (C. A. 6, 1940), 115 F. 2d 481, reversing 39 B. T. A. 429, certiorari denied 312 U. S. 704, and argues that it comes within the rationale of that case.

On the other hand, respondent points to *Title Insurance & Trust Co.* v. *Commissioner* (C. A. 9, 1938), 100 F. 2d 482, affirming a Memorandum Opinion, Board of Tax Appeals, entered March 31, 1938, and contends that it is more clearly applicable in the instant situation.

It is true that the situation here in some respects resembles that in the *Cleveland Trust Co.* case. The same might be said, however, of *Sherman* v. *Commissioner*, 146 F. 2d 219, in which the same court which decided the *Cleveland Trust Co.* case reached the opposite result. In the *Sherman* case, the court observed:

\* \* \* "the line of separation between trusts and associations is often so vague as to make them almost indistinguishable." Each case must be adjudicated upon its own facts. We regard the powers vested in the trustee in the instrument under the present consideration far more extensive than those possessed by the Cleveland Trust Company—so extensive, indeed, as to differentiate the cases. In the present litigation, the intent underlying the creation of the trust was obviously more corporate-minded; and the entire set-up of the trust bore greater resemblance to corporate practice and procedure.

The foregoing is particularly apposite here.

Bearing in mind the vagueness of the line of separation of which the court above speaks, we have read many cases falling on either side of the line and have concluded that the present case more closely parallels the situation existing in *Title Insurance & Trust Co.* v. *Commissioner*, *supra*, relied on by respondent. We hold that Main-Hammond was a business trust created and operated in behalf of its beneficiaries for their profit. Accordingly, respondent is sustained in his determination that Main-Hammond was an association taxable as a corporation.

In view of the action taken above with respect to Docket No. 29936, the merits of the question raised therein need not now be considered.

*Decision in Docket No. 27157 will be entered for the respondent.*

*An order will be entered dismissing Docket No. 29936 for lack of jurisdiction.*